[Cite as *PNH v. Alfa Laval, Inc.*, 189 Ohio App.3d 704, 2010-Ohio-3280.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| PNH, Inc. et al., | ) | |
| | ) | CASE NO. 09 MA 41 |
| APPELLANTS and | ) | |
| CROSS-APPELLEES, | ) | |
| | ) | |
| - V - | ) | OPINION |
| | ) | |
| ALFA LAVAL, INC., | ) | |
| | ) | |
| APPELLEE and | ) | June 29, 2010 |
| CROSS-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
Court, Case No. 05 CV 1695.

JUDGMENT:     Affirmed.

APPEARANCES:

Witschey, Witschey & Firestone Co., L.P.A., Jeffrey Witschey, and Alex Ragon, for
appellants and cross-appellees.

Hanna, Campbell & Powell, L.L.P., Frank Mazcaj, James M. Lyons Jr., and Robert L.
Tucker, for appellee and cross-appellant.


JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Gene Donofrio


DeGenaro, Judge.

{¶ 1} This timely appeal comes for consideration upon the record in the trial court,

the parties' briefs, and their oral arguments before this court. Plaintiff-appellants and

cross-appellees, PNH, Inc. and Ronald Creatore, appeal the judgment of the Mahoning County Court of Common Pleas that dismissed their claims against defendant-appellee and cross-appellant ,Alfa Laval, Inc. (incorrectly identified as Alfa Laval Flow, Inc.), for lack of subject-matter jurisdiction. Appellants also appeal the trial court's subsequent decision, issued during a limited remand from this court, which denied their Civ.R. 60(B) motion to vacate the dismissal order. Finally, appellants challenge the trial court's denial of their motions to amend the complaint and to compel discovery.

{¶ 2} Upon review, we find that appellants' arguments are meritless. The trial court properly dismissed the case for lack of subject-matter jurisdiction because appellants' claims of abuse of process and tortious interference are preempted by federal bankruptcy law. The trial court did not abuse its discretion by denying appellants' subsequent Civ.R. 60(B) motion. Appellants' arguments regarding the trial court's denial of their motion to amend and motion to compel discovery are moot based upon our conclusion that their claims were properly dismissed.

{¶ 3} Alfa Laval filed a cross-appeal in this matter, in which it challenges the trial court's January 8, 2008 denial of its motion for summary judgment regarding appellants' tortious-interference and abuse-of-process claims. The cross-appeal is also moot based upon our resolution of this appeal in Alfa Laval's favor. Accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

{¶ 4} In 2000, appellant Ronald Creatore, William Sayavich, and David Barnitt formed a holding company called U.S. Sanitary Corporation ("USSC") for the sole purpose

of purchasing all the stock of a fitting/valves distribution company called Girton, Oakes & Burger ("GO&B"). Creatore, through a living trust, Sayavich, and Barnitt entered into a close corporation agreement ("CCA") with USSC, which among other things, contained confidentiality and noncompete provisions. Creatore, Barnitt, and Sayavich were the sole shareholders of USSC, with Creatore having a 49 percent ownership interest, Sayavich a 33 percent interest, and Barnitt an 18 percent interest.

{¶ 5} The purchase of GO&B was financed by a loan from Provident Bank to GO&B and USSC. The sale became final in 2001 and the three became employees of GO&B: Creatore as President, Barnitt as CFO, and Sayavich as the head of sales and marketing. Subsequently, pursuant to the authority granted to him by the CCA, Creatore terminated Barnitt and Sayavich, alleging that the two had committed financial malfeasance with regard to the Provident loan.

{¶ 6} Appellee Alfa Laval's business includes the manufacture and sale of components and parts to the food and beverage sanitary- processing industry. Prior to the incidents which gave rise to this lawsuit, GO&B was a distributor for Alfa Laval's products in the Ohio, New York, and western Pennsylvania areas. GO&B was not bound by any exclusive distribution arrangement with Alfa Laval and, thus, GO&B began quietly producing a competing private-label line of products called "BuyPep."

{¶ 7} By 2003, GO&B owed Alfa Laval in excess of $1,000,000. Provident Bank was threatening foreclosure on the Provident loan. Alfa Laval executives met with Creatore to discuss their concerns. Alfa Laval presented Creatore a plan to minimize the impact on Alfa Laval if Provident Bank were to call in its loan and foreclose on GO&B. Alfa

Laval proposed that it (1) assume GO&B's customer base, (2) establish preference over GO&B's assets, (3) transfer GO&B's market share to another of Alfa Laval's distributors, and (4) obtain a noncompete covenant against Creatore preventing his competition against Alfa Laval and its distributors. Ultimately, Creatore did not accept those options and instead decided to purchase the Provident loan through a company he created for that sole purpose, PNH, Inc., the other appellant in this action. PNH is an acronym for Provident Note Holder.

{¶ 8} According to appellants, a disgruntled Barnitt and Sayavich contacted Alfa Laval and at Alfa Laval's behest and in violation of the confidentiality provisions of the CCA, of which Alfa Laval was purportedly aware, disclosed confidential information about GO&B, including information about the competing BuyPep line, and Creatore's plan to purchase the Provident loan. Appellants also allege that Barnitt's attorney told Alfa Laval's attorney about the closing date of the loan sale and that Barnitt and Sayavich began covertly helping Alfa Laval plan an involuntary-bankruptcy filing against GO&B.

{¶ 9} Just hours after PNH closed on the Provident loan purchase, Alfa Laval, along with two other GO&B creditors, filed an involuntary-bankruptcy petition against GO&B in the United States Bankruptcy Court for the Northern District of Ohio (case No. 03-41957). Once in the bankruptcy court, pursuant to a motion by Alfa Laval, a Gap Interim Trustee was appointed and took over management of GO&B, thereby forcing Creatore to relinquish any operational control he had over the company. As the bankruptcy proceeded, Creatore formed another company called Diversified Process Components, Inc., which produced a product line that competed with Alfa Laval's.

{¶ 10} Alfa Laval subsequently moved the bankruptcy court to enjoin Creatore and Diversified Process Components from competing with Alfa Laval. The bankruptcy court refused to entertain the motion, finding that only the trustee could seek such relief on behalf of GO&B and only after filing an adversary complaint.

{¶ 11} On May 29, 2003, Alfa Laval filed an adversary complaint in the bankruptcy court, naming itself and the Trustee as coplaintiffs and PNH, Creatore, and several other Creatore-affiliated companies as codefendants. The adversary complaint listed numerous alternative claims, including diversion of corporate assets and opportunities and preferential and fraudulent transfers, and requested a temporary restraining order. It also sought equitable subordination of the secured interests of PNH purchased from Provident Bank. The trustee did not initially sign the adversary complaint, but later ratified it. Appellants claim that Alfa Laval, through its attorneys, hounded and bullied the "malleable" trustee to pursue the adversary complaint and that Alfa Laval wrongfully used the adversary proceeding for an improper purpose, i.e., to eliminate Creatore and his new company from competing with Alfa Laval. Further, appellants allege that Alfa Laval improperly misappropriated the name, power, and authority of the trustee and committed other violations of bankruptcy law and procedure during the adversary proceeding.

{¶ 12} The trustee eventually entered into a compromise settlement agreement with appellants with regard to the adversary proceeding. After a hearing, the bankruptcy court, in an order dated July 3, 2003, approved the compromise settlement agreement. The bankruptcy court weighed various criteria in deciding that the settlement agreement was fair and equitable. Among other things, the court ruled that "[b]ased upon prior testimony,

the allegations contained in the complaint, and the arguments of counsel at the hearing on the Motion, the Court found that the adversary complaint presents colorable claims which are the exclusive right of the Trustee herein to assert, with some chance of success as to many of these claims." Alfa Laval refused to sign the compromise settlement agreement.

{¶ 13} On May 11, 2005, appellants filed the complaint giving rise to this appeal against Alfa Laval in the Mahoning County Court of Common Pleas, alleging defamation, tortious interference, and abuse of process. Appellant Creatore had previously brought the defamation and tortious-interference claims against Alfa Laval and several Alfa Laval executives in a previous action: *Sayavich v. Creatore,* Mahoning C.P. No. 03-CV-1081. However, Creatore voluntarily dismissed the claims against Alfa Laval without prejudice on May 25, 2004.[1]

{¶ 14} In the present case, Alfa Laval filed a motion to dismiss appellants' claims, or alternatively, a motion for more definite statement on September 9, 2005, which was overruled by the trial court. Alfa Laval then filed an answer with affirmative defenses. On December 18, 2006, Alfa Laval filed a motion for summary judgment on all appellants' claims, or alternatively a motion in limine. Appellants responded. Both sides sought the assistance of bankruptcy experts, who provided opinions about whether violations of

1 Case No. 03-CV-1081 eventually went to trial on two remaining claims: Creatore's defamation and breach-of-contract claims against Barnitt. The breach-of-contract claim alleged that Barnitt shared information with Alfa Laval regarding Creatore's competing BuyPep line, in violation of the nondisclosure provisions of the CCA. At the close of evidence, the trial court granted a directed verdict on the contract claim. The defamation claim, which concerned Creatore's allegations that Barnitt fabricated a story that Creatore had planned a bankruptcy "bust-out" of GO&B and had set up a competing company as a plan to leave Alfa Laval with a $1,000,000 uncollectable account, went to the jury. The jury found in favor of Creatore on the defamation claim and initially awarded zero damages, but after being ordered by the trial court to further deliberate on damages, the jury awarded Creatore $25,000. Barnitt appealed, and Creatore cross-appealed. In an opinion styled *Sayavich v. Creatore,* 7th Dist. No. 07 MA 217, 2009-Ohio-5270, this court affirmed the judgment of the trial court. DeGenaro, J., dissented in part.

bankruptcy law and procedure had occurred during the GO&B bankruptcy case. On January 7, 2008, the trial court issued a judgment entry granting Alfa Laval's motion for summary judgment on the defamation claim and denying it on the abuse-of-process and tortious-interference claims.

{¶ 15} The case was muddled by discovery disputes. Several motions to compel and motions for protective orders were filed by both sides. Appellants sought leave to file an amended complaint, which was overruled.

{¶ 16} On October 29, 2008, Alfa Laval filed a motion to dismiss appellants' remaining claims for lack of subject-matter jurisdiction. The trial court held a hearing on that and other motions on January 13, 2009 and both filed posthearing briefs. On February 2, 2009, the trial court granted Alfa Laval's motion to dismiss, agreeing that appellants' claims were preempted by federal bankruptcy law.

{¶ 17} Appellants filed a notice of appeal on February 27, 2009. Alfa Laval filed a notice of cross-appeal on March 5, 2009. This court granted appellants' motion for a limited remand to pursue a Civ.R. 60(B) motion in the trial court. Appellants filed the 60(B) motion on April 28, 2009, which the trial court overruled on May 8, 2009. Appellants filed a supplemental notice of appeal from that judgment entry on June 2, 2009.

### Bankruptcy Law Preemption

{¶ 18} In their first of three assignments of error, appellants assert:

{¶ 19} "The trial court erred in finding it did not have jurisdiction over Plaintiffs' state law claims of tortuous [sic] interference, abuse of process and unfair business competition on the basis of federal bankruptcy law preemption."

{¶ 20} Appellants challenge both the trial court's initial dismissal of their claims and the trial court's subsequent denial of their motion to vacate the court's judgment of dismissal. Although appellants intermingle arguments regarding the initial dismissal and the denial of the Civ.R. 60(B) motion, for ease of analysis, we will address these rulings separately.

*Initial Dismissal*

{¶ 21} Appellate review on a dismissal for lack of subject-matter jurisdiction is de novo. *Crestmont Cleveland Partnership v. Ohio Dept. of Health* (2000), 139 Ohio App.3d 928, 936, 746 N.E.2d 222. Further, in determining whether the trial court properly dismissed the case for lack of subject-matter jurisdiction, the trial court and hence a reviewing court are not limited to an examination of the allegations in the complaint, but rather have the authority to consider any pertinent evidentiary material in the record. *McGuffey v. LensCrafters, Inc.* (2001), 141 Ohio App.3d 44, 50, 749 N.E.2d 825.

{¶ 22} As indicated, at the time of dismissal, two of appellants' claims remained: tortious interference with a contract and abuse of process. With regard to the tortious-interference claim, appellants alleged that Alfa Laval had knowledge of the terms of the Close Corporation Agreement ("CCA") between Creatore, Sayavich, Barnitt, and USSC and interfered with the CCA by soliciting Sayavich and Barnitt to reveal confidential information protected thereby. Appellants further alleged that the information Alfa Laval wrongly procured from Sayavich and Barnitt caused Alfa Laval to file the involuntary-bankruptcy petition against GO&B, which in turn caused appellants' damages.

{¶ 23} More specifically, appellants alleged in their answers to interrogatories:

**{¶ 24}** "Defendant was in possession of the CCA at the time Defendant solicited Sayavich and Barnitt to violate the clear terms of that contract. Defendant used the information unlawfully solicited in violation of this contract and as a pretence and excuse to then force GO&B into Bankruptcy immediately after Plaintiffs purchased approximately 1.5 million dollars of GO&B debt.  All of these actions were done under false pretenses and were intended to financially ruin Plaintiffs."

**{¶ 25}** The abuse-of-process claim concerned Alfa Laval's conduct in filing and pursuing the adversary complaint against appellants during the GO&B bankruptcy proceedings.  More specifically, appellants alleged that the adversary complaint was wrongfully used to obtain an improper objective, i.e., to prevent appellant Creatore from operating a separate business in competition with Alfa Laval.  In their answers to interrogatories, appellants more specifically alleged that "[i]n an effort to preclude Creatore and GO&B from lawfully competing against Alfa Laval, [Alfa Laval] filed an involuntary bankruptcy petition against GO&B and subsequently perverted this process by fabricating allegations against GO&B and Creatore and prepared an adversarial complaint for filing in the Bankruptcy Court to eliminate GO&B and Creatore as competitors. [Alfa Laval] then intentionally misrepresented information about Creatore's character to the Trustee to get the Truustee [sic] to pursue such false allegations."

**{¶ 26}** Alfa Laval filed a motion to dismiss both claims based on lack of subject-matter jurisdiction, arguing that the claims were preempted by federal bankruptcy law. The trial court granted the motion in a February 2, 2009 judgment entry, which stated in its entirety:

{¶ 27} "Because this court lacks subject matter jurisdiction, regarding the claims of the Plaintiff, the Motion to Dismiss of the Defendant, Alfa Laval Flow, Inc. is hereby granted. This court finds that the remedies available to the Plaintiffs are exclusive to those provided by bankruptcy law and procedure. This court finds that the state law claims, such as those herein and presented, have been preempted. The complaint is therefore dismissed."

{¶ 28} State law is preempted by federal law under the Supremacy Clause of the United States Constitution in three circumstances. Clause 2, Article VI, United States Constitution. The first circumstance, often termed "express preemption," means that "Congress can define explicitly the extent to which its enactments preempt state law." *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65. The other two circumstances encompass forms of implied preemption, i.e., "field pre-emption" and "conflict preemption." Field preemption means "in absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." Id. at 79. Conflict preemption occurs when "state law is pre-empted to the extent that it actually conflicts with federal law." Id. Congressional intent is paramount in determining whether federal law preempts state law. *California Fed. S. & L. Assn. v. Guerra* (1987), 479 U.S. 272, 280, 107 S.Ct. 683, 93 L.Ed.2d 613.

{¶ 29} The Bankruptcy Code does not explicitly prohibit state-law tort claims that arise from bankruptcy proceedings. Thus, the question to be resolved in this appeal is whether Congress impliedly preempted such claims. This is an issue of first impression

for this court. Neither this district, nor the Ohio Supreme Court, has addressed this question. Courts across the country—both state and federal—are divided on this issue. The majority position holds that such claims are preempted under a field-preemption theory, and Alfa Laval urges this court to follow this line of decisions. The seminal case, often cited by other courts, is the Ninth Circuit's *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (C.A.9, 1996), 74 F.3d 910. In *MSR Exploration*, debtor-plaintiffs brought a state-law claim of malicious prosecution against creditor-defendants for filing creditor's claims during bankruptcy proceedings. The federal district court dismissed the claims on the basis that the court lacked subject-matter jurisdiction because the action was preempted by bankruptcy law. On appeal, the Ninth Circuit affirmed the dismissal. Id. at 916.

{¶ 30} The court provided several reasons for its determination that the cause of action was preempted. First, the court opined that Congress's intent to preempt the field is demonstrated by the fact that bankruptcy matters fall under the exclusive jurisdiction of federal courts. Id. at 913.

{¶ 31} Second, the court noted that "a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. Sec. 101 et seq., demonstrates Congress's intent  to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the

management of the bankruptcy process.

{¶ 32} "Debtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings, would all lend themselves to claims of malicious prosecution. Those possibilities might gravely affect the already complicated processes of the bankruptcy court. * * * Of course, the opportunities for asserting malicious prosecution claims would only be limited by the fertility of the pleader's mind and by the laws of the state in which the proceeding took place." Id. at 914.

{¶ 33} Third, the court noted that the need for uniformity in bankruptcy proceedings was so important historically that the framers of the United States Constitution were persuaded to expressly grant Congress the power " 'to establish * * * uniform Laws on the subject of Bankruptcies throughout the United States.' " Id., quoting Clause 4, Section 8, Article I, United States Constitution.

{¶ 34} Finally, the court expounded upon the fact that Congress has created specific remedies to prevent misuse of the bankruptcy process, including Fed.R.Bankr.P. 9011 (frivolous and harassing filings); Section 105(a), Title 11, U.S.Code (authority to prevent abuse of process); Section 303(i)(2), Title 11, U.S.Code (bad-faith filing of involuntary petitions); Section 362(h), Title 11, U.S.Code (willful violation of stays); Section 707(b), Title 11, U.S.Code (dismissal for substantial abuse); Section 930, Title 11, U.S.Code (dismissal under Chapter 9); and Section 1112, Title 11, U.S.Code (dismissal under Chapter 11). This suggested to the court that "Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *MSR Exploration,*74 F.3d at 915, citing *Mertens v. Hewitt Assoc.* (1993), 508 U.S. 248,

113 S.Ct. 2063, 124 L.Ed.2d 161 (enforcement scheme in ERISA indicates that Congress did not forget other remedies); *Pilot Life Ins. Co. v. Dedeaux* (1987), 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (ERISA remedies preempt others, even if some possible remedies are left out); and *Gibson v. Prudential Ins. Co.* (C.A.9, 1990), 915 F.2d 414, 418.

{¶ 35} Most jurisdictions have adopted the position as set forth in *MSR Exploration*. See, e.g., *Casden v. Burns (*N.D.Ohio 2007), 504 F.Supp.2d 272 (shareholder's claim that corporate officers breached fiduciary duty by deciding to file bankruptcy petition preempted); *In re Miles* (C.A.9, 2005), 430 F.3d 1083 (claims by debtor and debtor's relatives against creditors, their attorneys, and legal staff for alleged bad-faith conduct in filing involuntary-bankruptcy petitions preempted); *Lewis v. Chelsea G.C.A. Realty Partnership, L.P.* (2004), 86 Conn.App. 596, 862 A.2d 368 (federal preemption in field of bankruptcy deprives Connecticut courts of jurisdiction to hear state-law unfair-trade-practices claim asserting that an action brought in federal bankruptcy court was improper); *Glannon v. Garrett & Assoc., Inc.* (D.Kan.2001), 261 B.R. 259 (state-law claims based on filing of involuntary-bankruptcy petition, adversary proceeding, and violation of automatic stay preempted); *Shiner v. Moriarty* (Pa.Super.1998), 706 A.2d 1228 (state-law tort claim against creditors, their attorneys, and law firm for filing various improper bankruptcy papers preempted); *Raymark Industries, Inc. v. Baron* (June 23, 1997), E.D.Pa. No. 96-7625 (debtor's state-law tort claims against creditors arising from creditors' filing of an involuntary-bankruptcy petition preempted); *Mason v. Smith* (1996), 140 N.H. 696, 672 A.2d 705 (state tort action against creditors who instituted involuntary-bankruptcy proceeding preempted); *Koffman v. Osteoimplant Technology., Inc.* (D.Md.1995), 182 B.R.

115 (debtor's claims of abuse of process and malicious prosecution against creditors who instituted involuntary-bankruptcy proceeding preempted); *Edmonds v. Lawrence Natl. Bank & Trust Co.* (1991), 16 Kan.App.2d 331, 823 P.2d 219 (abuse-of-process and malicious-prosecution claims arising from defendant's filing of complaint to revoke plaintiffs' discharge granted by bankruptcy court preempted); *Idell v. Goodman* (1990), 224 Cal.App.3d 262, 273 Cal.Rptr. 605 (malicious-prosecution action by a debtor against a creditor for "improperly" objecting to the discharge of the debtor's fiscal obligations preempted); *Smith Corp. v. Terry's Tractor, Inc.* (1989), 209 Cal.App.3d 951, 257 Cal.Rptr. 598 (debtor's claims of abuse of process and malicious prosecution against creditors who instituted involuntary-bankruptcy proceeding were preempted by federal law); *Gonzales v. Parks* (C.A.9, 1987), 830 F.2d 1033 (abuse-of-process claim regarding filing of a bankruptcy petition preempted).

{¶ 36} Notably, the Sixth Circuit Court of Appeals also favors preemption. See *Pertuso v. Ford Motor Credit Co.* (C.A.6, 2000), 233 F.3d 417. In *Pertuso*, bankruptcy debtors brought a purported class-action suit against their secured creditor in federal court asserting Ohio common-law claims for unjust enrichment and an accounting. More specifically, the debtor-plaintiffs challenged the creditor's conduct in the bankruptcy court with regard to a reaffirmation agreement. The Sixth Circuit, citing *MSR Exploration*, held that those claims were preempted by bankruptcy law as Congress had preempted the field. Id. at 425-426. The court continued:

{¶ 37} "As [the defendant] correctly points out, the [the plaintiffs'] state law claims presuppose a violation of the Bankruptcy Code. Permitting assertion of a host of state law

causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would 'stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. at 426, quoting *Bibbo v. Dean Witter Reynolds, Inc.* (C.A.6, 1998), 151 F.3d 559, 562-563.

{¶ 38} A recent Pennsylvania Supreme Court case, *Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien* (2006), 589 Pa. 296, 908 A.2d 875, follows the majority rule as well. In *Stone Crushed Partnership,* one of the plaintiffs, James Jackson, had partnered with several of the defendants to form Granite Partners One, Ltd. In a situation similar to that in the case at bar, Granite defaulted on its loan obligations and Jackson, seeking to avoid foreclosure, formed a separate partnership called Stone Crushed Partnership ("Stone") to assume Granite's debt. Stone was essentially Jackson acting in accordance with the protection afforded to a limited-partnership entity. Granite's remaining partners, defendants Archbold and O'Brien, put Granite into bankruptcy by instituting Chapter 11 bankruptcy proceedings. While in bankruptcy, Stone instituted an adversary action against the debtor Granite and the nondebtors Archbold, and O'Brien. Granite, Archbold, and O'Brien in turn filed counterclaims against Stone and Jackson, which were dismissed by the bankruptcy court.

{¶ 39} Stone and Jackson then brought suit in Pennsylvania state court alleging state-law claims of abuse of process and wrongful use of civil proceedings arising from the counterclaims filed in the adversary proceeding. Summary judgment was granted in favor of Archbold and O'Brien, and the Pennsylvania Supreme Court affirmed, following the majority of courts and holding that the state-law claims were preempted by federal

bankruptcy law. The court noted that even though a state-law action would have provided greater remedies than those available in the Bankruptcy Code, the plaintiffs' claims were nonetheless preempted. *Stone Crushed Partnership* at 314-315. *Stone Crushed Partnership* is factually very similar to the present case, and we find it telling that appellants do not attempt to distinguish it.

{¶ 40} Instead, appellants urge us to adopt the minority position and to conclude that state-law tort claims are not preempted. However, the overwhelming weight of authority is against that position, and moreover, decisions favoring the minority view are often fractured.

{¶ 41} For instance, in a recent five-to-four Texas Supreme Court decision, *Graber v. Fuqua* (Tex.2009), 279 S.W.3d 608, a slim majority of the court held that a state-law malicious-prosecution claim concerning an adversary complaint filed during the course of a Chapter 7 bankruptcy proceeding was not preempted by federal law. Id. at 610. A strong dissent concluded the opposite, stating that "[d[ebtors have adequate recourse for abuse of the bankruptcy process in the Bankruptcy Code and Rules." Id. at 621 (Wainwright, J., dissenting). The dissent expressed its concern that the majority's holding "undermines the uniformity mandated for bankruptcy law in the United States Constitution, as under the [majority's] rationale all fifty states could overlay their state remedies on the bankruptcy proceedings and multiply the controversy for years beyond the controlled confines of the federal bankruptcy process." Id. (Wainwright, J., dissenting).

{¶ 42} Although a divided panel from the Fifth District implicitly favored the minority rule in *Dever v. Lucas*, 174 Ohio App.3d 725, 2008-Ohio-332, 884 N.E.2d 641, there was

a dissent in that case as well. *Dever* involved malicious-prosecution and abuse-of-process claims arising from a bankruptcy proceeding. The trial court granted defendants' Civ.R. 12(B)(6) motion and dismissed both claims. Plaintiffs appealed. The majority's analysis centered on whether the plaintiffs' complaint stated claims for malicious prosecution and abuse of process. Id. at ¶29, 42. The majority did not directly address preemption, apparently because the issue had not been raised.

{¶ 43} The dissent concluded that the claims should have been dismissed for lack of subject-matter jurisdiction, noting that subject-matter jurisdiction may be raised sua sponte by the court at any stage of the proceedings, including for the first time on appeal. Id. at ¶46-47 (Delaney, J., dissenting). The dissent continued:

{¶ 44} "I agree with other jurisdictions that have determined that the Bankruptcy Code and Federal Rules of Civil Procedure, specifically Section 105, Title 11, U.S.Code and Fed.R.Civ.P. 11, preempt state-law claims of malicious prosecution and abuse of process for conduct that occurred in bankruptcy proceedings.

{¶ 45} "As recently recognized by the Supreme Court of Pennsylvania in *Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien* (2006), 589 Pa. 296, 908 A.2d 875, parties could be deterred from exercising their rights in bankruptcy if, by filing a bankruptcy action, they risk being faced with a state-court lawsuit and liability for substantial damages, citing *Gonzales v. Parks* (C.A.9, 1987), 830 F.2d 1033, 1036. It is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized. Id. at 308, 908 A.2d 875. * * * Accordingly, I

would affirm the trial court's dismissal of the complaint, albeit on different grounds." *Dever* at ¶48-51 (Delaney, J., dissenting).

{¶ 46} This analysis is persuasive. We share the concerns of many other courts that state tort actions which presuppose bankruptcy-law violations could undermine the uniformity of the bankruptcy process. In addition, parties could be deterred from exercising their rights in bankruptcy if, by filing a bankruptcy action, they risk being faced with a state-court lawsuit and liability for substantial damages. Moreover, the Bankruptcy Code contains many remedies for improper conduct during a bankruptcy proceeding. Section 303(i), Title 11, U.S.Code authorizes sanctions for involuntary-bankruptcy petitions filed in bad faith which includes costs, reasonable attorney fees, damages proximately caused by the filing, and punitive damages. Section 105(a), Title 11, U.S.Code provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate * * * *to prevent an abuse of process*." (Emphasis added.) Rule 9011 of the Federal Rules of Bankruptcy Procedure provides sanctions for frivolous and harassing filings. The fact that Congress provided remedies for bad-faith conduct and abuse of process in a bankruptcy proceeding evinces its intent that state-law tort claims arising from misuse of those proceedings are preempted.

{¶ 47} Appellants argue that even if we side with the majority of courts on the overarching preemption issue, their claims are somehow unique and therefore factually distinguishable from the above cases, thus making preemption unwarranted. First, with respect to their abuse-of-process claim, which centers on the adversary complaint, appellants contend that the adversary proceeding was not a "core proceeding" under

Section 1334(a) and that therefore the bankruptcy court had only concurrent jurisdiction over the claim, which, according to appellants, makes preemption unwarranted. Appellants cite *In re Wolverine Radio Co.* (C.A.6, 1991), 930 F.2d 1132, in support of this argument. However, *Wolverine* is not on point. There the Sixth Circuit held that a proceeding brought by a Chapter 11 debtor to determine the Michigan Employment Security Commission's authority to transfer the debtor's experience rating to an assignee of a purchaser of the debtor's assets and to determine assignee's liability under the Michigan Employment Security Act was a "core proceeding," over which the district court had exclusive jurisdiction. *Id.* at 1143-1144.

{¶ 48} Moreover, as Alfa Laval points out, *MSR Exploration* and its progeny turned on the detailed, highly complex laws governing bankruptcy in concluding preemption, not on whether the claims of abuse during the bankruptcy process concern a "core proceeding." In other words, conspicuously absent from the analyses of those courts is any discussion of whether or not the proceedings were "core." *Stone Crushed Partnership* involved an adversary dispute between nondebtors, something appellants would characterize as "non-core," yet the Pennsylvania Supreme Court nonetheless found preemption. 589 Pa.296, 908 A.2d 875.

{¶ 49} Second, appellants argue that because none of the parties to the state-court litigation in the instant case were debtors in the bankruptcy court action, preemption is improper. However, several of the cases favoring preemption concerned state-court suits involving nondebtors. See, e.g., *Stone Crushed Partnership,* 589 Pa. 296, 908 A.2d 875, and *In re Miles,* 430 F.3d 1083*.* For instance, *In re Miles* involved a suit brought in

California state court against a creditor by the relatives of several bankruptcy debtors for alleged bad-faith filing of a bankruptcy petition. None of the relatives sought damages for involuntary-bankruptcy petitions filed against them personally. Despite the fact that the case involved purely nondebtors, the Ninth Circuit found the state-law claims preempted by federal bankruptcy law. Id. at 1091.

{¶ 50} Third, appellants make a timing argument with respect to their tortious-interference claim. Namely, they argue that this claim arose prior to Alfa Laval filing the involuntary-bankruptcy petition against GO&B and that the claim cannot be preempted for this reason. However, an analogous argument was raised and rejected in *Casden*, 504 F.Supp.2d 272, supra. *Casden* involved a shareholder suit where one of the claims alleged that the corporate officers' decision to file a voluntary Chapter 11 bankruptcy petition constituted a breach of fiduciary duty. Among other things, the shareholder-plaintiff argued that the claims should not be preempted by federal bankruptcy law because the alleged breach of fiduciary duty occurred *prior* to any filing in the bankruptcy court. The federal district court rejected this argument. The court reasoned that the claim for breach of fiduciary duty could not accrue until such time as damages occurred and that any alleged damages could not have occurred until the Chapter 11 bankruptcy petition was filed. Id. at 281, citing, inter alia, *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St.3d 79, 81-82, 437 N.E.2d 1194 (finding tort cause of action accrued as of date that damages were incurred and not earlier date when duty was breached).

{¶ 51} The federal district court continued:

{¶ 52} "When, as here, injury to shareholders might never occur, and thus plaintiff's

claim would not accrue, if at all, until after the company files its bankruptcy petition, and accrual of the claim depends on what happens in the Bankruptcy Court, the potential future claim would interfere sufficiently with the bankruptcy process to trigger preemption." *Casden* at 281, citing *Pertuso,* 233 F.3d 417, and *MSR Exploration,* 74 F.3d 910.

{¶ 53} This logic can be applied here. Appellants argue that the tortious interference occurred prior to the bankruptcy filing and therefore should not be preempted. However, any damage from the alleged tortious interference did not occur until Alfa Laval filed the involuntary-bankruptcy petition. In order to succeed on their tortious-interference claim, appellants would necessarily have to prove that the bankruptcy was filed in bad faith. Cf. *Casden,* 504 F.Supp.2d at 280. Numerous courts have held that state-law claims based on the bad-faith filing of an involuntary-bankruptcy petition are preempted. See, e.g., *In re Miles; Glannon,* 261 B.R.259; *Raymark Industries*, E.D.Pa. No. 96-7625; *Mason*, 140 N.H. 696, 672 A.2d 705; *Koffman*, 182 B.R. 115; and *Smith,* 209 Cal.App.3d 951, 257 Cal.Rptr. 598. Even the majority in *Graber*, which concluded there was no preemption of a state-law claim arising from an adversary proceeding, signaled in dicta that a state-law claim based upon the bad-faith filing of an involuntary petition would be preempted. *Graber,* 279 S.W.3d at 65 ("it is more likely that Congress considered the need to deter misuse of the unique involuntary petition process it created, and more likely that it intended section 303(i) to be the exclusive remedy").

{¶ 54} Finally, appellants argue in their reply brief that a 2005 United States Supreme Court case, *Bates v. Dow Agrosciences, L.L.C.* (2005), 544 U.S. 431, 125 S.Ct. 1788, 161 L.Ed.2d 687, supports their argument against preemption. In their view, *Bates*

narrowed the federal-law preemption to situations where Congress's intent to preempt is "clear and manifest." In *Bates,* the United States Supreme Court held that certain state-law claims were not preempted by the Federal Insecticide, Rodenticide & Fungicide Act ("FIRFA"). The court further ruled that "[i]n areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" Id. at 449, quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995), 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447.

**{¶ 55}** *Bates* is not entirely on point because it does not deal with preemption under the Bankruptcy Code, but rather under FIRFA. Further, bankruptcy law is far from an area of "traditional state regulation." Moreover, even applying the clear-and-manifest standard to the case at hand, Congress's intent to preempt the entire field of bankruptcy law meets that standard.

**{¶ 56}** Thus, based on the foregoing, we conclude that the trial court properly dismissed appellants' claims for lack of subject-matter jurisdiction as they were preempted by federal bankruptcy law. The first part of appellants' first assignment of error is meritless.

*Ruling on the Civ.R. 60(B) Motion*

**{¶ 57}** Appellants also appeal the trial court's ruling on the Civ.R. 60(B) motion, which denied their motion to vacate the court's judgment of dismissal. As aforementioned, following the trial court's dismissal of this case for lack of subject-matter jurisdiction, appellants filed a motion for relief from the automatic stay in the bankruptcy court. After a

hearing, the bankruptcy court denied the motion for relief from stay as moot since the state trial court action had already been dismissed. In the body of the opinion, the bankruptcy court did state, "The Court finds that the automatic stay is not applicable to the State Court Case. Debtor Girton, Oakes & Burger (Debtor) is not a party to the State Court Case, and the State Court case does not affect any property of the estate."

{¶ 58} Upon motion of appellants, we granted a limited remand so that appellants could pursue a Civ.R. 60(B) motion in the trial court, in light of the bankruptcy court decision. In that motion, appellants claimed that the bankruptcy court's ruling warranted the trial court to vacate its judgment of dismissal. The trial court denied the motion, and appellants filed a supplemental notice of appeal from that judgment.

{¶ 59} In order to prevail on a Civ.R. 60(B) motion for relief from judgment, the movant must demonstrate that "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 150-151, 1 O.O.3d 86, 351 N.E.2d 113.

{¶ 60} The five listed grounds in Civ.R. 60(B) are as follows: "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or

discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."

{¶ 61} A trial court's ruling on a Civ.R. 60(B) motion is reviewed for an abuse of discretion. *Riesbeck v. Indus. Paint & Strip*, 7th Dist. No. 08 MO 11, 2009-Ohio-6250, at ¶ 17, citing *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 62} Here the trial court did not abuse its discretion by denying the motion. The bankruptcy court's decision does not justify vacating the dismissal order and reinstating the case for several reasons. First, the bankruptcy court's ruling on appellants' motion for relief from the automatic stay is not dispositive of the preemption issue. Federal bankruptcy law preemption and violations of the automatic stay are two separate and distinct legal concepts. With regard to the automatic stay, the Bankruptcy Code mandates a stay in further judicial proceedings against the debtor until a bankruptcy dispute is resolved. Section 362(a)(1), Title 11, U.S.Code provides that unless the action falls under one of the exceptions listed in subsection (b), the filing of a bankruptcy petition operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim *against the debtor* that arose before the commencement of the

case under this title." (Emphasis added.)

**{¶ 63}** Thus, the automatic stay protects bankruptcy debtors from most types of suits filed against them during the course of the bankruptcy proceeding. By contrast, preemption relates to certain types of state-law *claims*, which may or may not involve the debtor as a defendant, that conflict with federal law, either implicitly or explicitly. See *English*, 496 U.S. at 78, 110 St. Ct. 2270, 110 L.Ed.2d 65.

**{¶ 64}** Appellants focus on the bankruptcy court's declaration that "the State Court Case does not affect any property of the estate," to justify their position that preemption of their claims was unwarranted. However, appellants take that statement out of context; it was made by the bankruptcy court pursuant to its ruling on appellants' motion for relief from the automatic stay. The bankruptcy court's full statement on this topic in its judgment entry was as follows: "The Court finds that *the automatic stay is not applicable to the State Court Case*. Debtor Girton, Oakes & Burger ('Debtor') is not a party to the State Court Case, and the State Court case does not affect any property of the estate." (Emphasis added.)

**{¶ 65}** Moreover, the bankruptcy court stated during the hearing on the motion for relief from stay that it believed that the trial court was correct in dismissing the present case for lack of subject-matter jurisdiction:

**{¶ 66}** "[J]ust to make sure that it is very clear, the allegations in the State Court case that the Court has read appear to go to the good faith of the filing [of the involuntary-bankruptcy petition] by Alfa Laval, which I think has long passed and is not something that another creditor can assert to begin with, and I think the allegations with respect to the

filing of the adversary proceeding are also not for this creditor to assert, and to the extent that the Trustee had any of those concerns, I think those concerns have been waived or ratified.

{¶ 67} "So I think that *the State Court was correct that the State Court does not have jurisdiction* over *at least most of the allegations that are, that have been asserted in the State Court suit.*"  (Emphasis added.)

{¶ 68} The bankruptcy court then ruled that the automatic stay does not apply to the present suit and denied appellants' motion for relief as moot because this case had already been dismissed by the trial court.  Thus, the bankruptcy court's ruling does not support appellants' motion to vacate the dismissal.  If anything, it actually supports the trial court's decision to dismiss the case for lack of subject-matter jurisdiction.

{¶ 69} Finally, as Alfa Laval notes, appellants failed to argue precisely how they were entitled to relief from judgment under any of the listed grounds in Civ.R. 60(B).  They cited sections (1), (2), and (5) in their motion, but offered no explanation as to how or why they were entitled to relief under those sections.  For all of these reasons, the trial court properly denied appellants' Civ.R. 60(B) motion.

{¶ 70} Based on the foregoing, the trial court properly dismissed appellants' claims for lack of subject-matter jurisdiction, and the court did not abuse its discretion in denying the subsequent Civ.R. 60(B) motion.  Accordingly, appellants' first assignment of error is meritless.

### Appellants' Remaining Assignments of Error

{¶ 71} In their second and third assignments of error, appellants assert:

{¶ 72} "The state trial court erred in denying plaintiff's motion to amend their complaint to add a claim for unfair competition and unfair trade practices."

{¶ 73} "The trial court erred in denying Plaintiff's motion to compel the production of documents withheld by the Defendant under a claim of attorney-client privilege and work product."

{¶ 74} Based upon our resolution of appellants' first assignment of error, which concludes that the trial court correctly dismissed all of appellants' claims, these assignments of error are moot, and we decline to address them.

### Alfa Laval's Cross-Appeal

{¶ 75} Alfa Laval filed a cross-appeal in this matter, in which it assigns two errors:

{¶ 76} "The trial court erred when it failed to grant summary judgment in favor of Alfa Laval concerning the tortious interference claim."

{¶ 77} "The trial court erred when it failed to grant summary judgment in favor of Alfa Laval concerning the abuse of process claim."

{¶ 78} Here, Alfa Laval attempts to challenge the trial court's January 8, 2008 denial of Alfa Laval's motion for summary judgment on appellants' tortious-interference and abuse-of-process claims. Because we have resolved this appeal in Alfa Laval's favor, we decline to discuss the merits of Alfa Laval's cross-assignments of error; these issues are moot.

### Conclusion

{¶ 79} All of appellants' arguments are meritless. The trial court properly dismissed the case for lack of subject-matter jurisdiction because appellants' abuse-of-process and

tortious-interference claims are preempted by federal bankruptcy law. The trial court did not abuse its discretion by denying appellants' subsequent Civ.R. 60(B) motion. Appellants' arguments regarding the trial court's denial of their motion to amend and motion to compel discovery are moot based upon our conclusion that their claims were properly dismissed. Alfa Laval's cross-appeal is also moot based upon our resolution of this appeal in Alfa Laval's favor. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

VUKOVICH, P.J., and DONOFRIO, J., concurs.