PNH, INC., ET AL., APPELLANTS, *v.* ALFA LAVAL FLOW, INC., APPELLEE.

[Cite as *PNH, Inc. v. Alfa Laval Flow, Inc.*,

130 Ohio St.3d 278, 2011-Ohio-4398.]

*Bankruptcy—Federal preemption of state law causes of action for misconduct in bankruptcy proceedings.*

(No. 2010-1430—Submitted May 25, 2011—Decided September 7, 2011.)

APPEAL from the Court of Appeals for Mahoning County,

No. 09 MA 41, 189 Ohio App.3d 704, 2010-Ohio-3280.

_____

SYLLABUS OF THE COURT

The United States Bankruptcy Code preempts state-law causes of action for misconduct committed by a litigant during a bankruptcy court proceeding.

_____

O'DONNELL, J.

{¶ 1} The issue we confront in this appeal is whether the claims of PNH, Inc., and Ronald Creatore against Alfa Laval Flow, Inc., for abuse of process and tortious interference with a contract are preempted by the United States Bankruptcy Code because they seek to recover for misconduct allegedly committed during a federal bankruptcy court proceeding.

{¶ 2} PNH and Creatore asserted that Alfa Laval misused an involuntary-bankruptcy case it filed against Girton, Oakes & Burger, Inc., in an effort to eliminate Creatore as a competitor in the sale of equipment for sanitary processing of food and beverages. The trial court dismissed these claims, and the appellate court affirmed, holding that federal law has preempted state-law causes of action alleging the abuse of bankruptcy proceedings.

{¶ 3} In enacting the Bankruptcy Code, the United States Congress established a comprehensive scheme intended to promote the uniformity of

bankruptcy law, and it provided for federal remedies to deter the abuse of bankruptcy court proceedings. To permit an Ohio litigant to assert state-law claims for misconduct committed during a bankruptcy proceeding as a supplement to these federal remedies would frustrate the intent of Congress by establishing standards of conduct for Ohio litigants that vary from proceedings in other states. For these reasons, we conclude that the Bankruptcy Code preempts state-law claims that allow the recovery of damages for misconduct committed by a litigant during a bankruptcy court proceeding. We therefore affirm the judgment of the Seventh District Court of Appeals.

**Facts and Procedural History**

{¶ 4} In January 2001, Creatore, William Sayavich, and David Barnitt formed a holding company called U.S. Sanitary Corporation ("USSC") for the purpose of purchasing the stock of Girton, Oakes & Burger, Inc. ("GO&B"). At that time, GO&B was the exclusive distributor in Ohio, New York, and western Pennsylvania for Alfa Laval Flow, Inc., which manufactures equipment for sanitary processing of food and beverages.

{¶ 5} Creatore, Sayavich, and Barnitt entered into a close-corporation agreement that contained confidentiality and noncompetition provisions, and they financed the purchase of GO&B through a loan from Provident Bank. On purchasing GO&B, Creatore became its president, Barnitt its chief financial officer, and Sayavich its head of sales and marketing. However, Alfa Laval soon ended the exclusivity of GO&B's distributorship, and GO&B responded by starting a private-label line of products that competed with the ones it distributed for Alfa Laval.

{¶ 6} By 2003, GO&B owed Alfa Laval more than $1 million, and Provident Bank threatened to foreclose on its loan. Alfa Laval presented Creatore with a plan to minimize the impact on it in the event of foreclosure, proposing to acquire GO&B's intangible assets and to give its distributorship to a competitor.

Creatore rejected this proposal and instead decided to purchase the Provident Bank loan through a company he created for that purpose, PNH, Inc.

{¶ 7} In late February and early March, Creatore terminated Barnitt and Sayavich for accounting errors in financial reports to Provident Bank, and he gave Alfa Laval notice that both were bound by the confidentiality and noncompetition provisions of the close-corporation agreement. Nonetheless, Barnitt and Sayavich allegedly informed Alfa Laval that GO&B had established a competing line of products and that Creatore had planned to purchase the Provident Bank loan.

{¶ 8} On April 23, 2003, PNH closed on the Provident Bank loan purchase. That same day, Alfa Laval and two other GO&B creditors filed an involuntary-bankruptcy petition against GO&B in the United States Bankruptcy Court for the Northern District of Ohio, and the court appointed an interim trustee to assume control over GO&B's management. Creatore then formed a company called Diversified Process Components, Inc., to start another product line that competed with Alfa Laval's products.

{¶ 9} On May 29, 2003, counsel for Alfa Laval filed an adversary complaint in the bankruptcy court, naming itself and the trustee as plaintiffs and PNH, Creatore, and other "Creatore shell companies" as defendants. Alfa Laval alleged that Creatore had diverted corporate assets and opportunities from GO&B and wrongfully used its confidential design specifications to start a competing enterprise manufacturing "knock-off products," and it sought an injunction to enforce the confidentiality and noncompetition provisions of the USSC close-corporation agreement against Creatore. The trustee did not sign the adversary complaint, but later ratified it. Eventually, the trustee and Creatore reached a settlement in the adversary proceeding, which the bankruptcy court approved over Alfa Laval's objections.

{¶ 10} On May 11, 2005, Creatore and PNH brought this action against Alfa Laval in the Mahoning County Court of Common Pleas, asserting claims for

defamation, tortious interference with a contract, and abuse of process. They alleged that Alfa Laval had improperly used the adversary proceeding to eliminate Creatore and Diversified Process Components as competitors, an objective not permitted by bankruptcy law, and that Alfa Laval had wrongfully misappropriated the name, power, and authority of the trustee in the adversary proceeding.

{¶ 11} On January 7, 2008, the trial court entered summary judgment against Creatore and PNH on the defamation claim. On February 2, 2009, the court dismissed the claims of abuse of process and tortious interference with a contract for lack of jurisdiction, concluding that those causes of action had been preempted by federal bankruptcy law. The trial court subsequently denied Creatore and PNH relief from that judgment.

{¶ 12} On appeal, the Seventh District affirmed, holding that state-law claims for abuse of process and tortious interference with a contract arising during a bankruptcy proceeding were preempted by the Bankruptcy Code. 189 Ohio App.3d 704, 2010-Ohio-3280, 940 N.E.2d 577, ¶ 56. The appellate court reasoned that allowing state-law remedies for violations of federal bankruptcy procedure would undermine the uniformity of the bankruptcy process and deter parties from exercising federal rights created by the Bankruptcy Code. Id. at ¶ 46. Further, the court emphasized that bankruptcy law already provided remedies for abuse of bankruptcy proceedings, evincing the intent of Congress to preempt state-law tort claims arising from the misuse of those proceedings. Id. The appellate court therefore determined that the trial court did not err in dismissing the claims or in denying relief from that judgment. Id. at ¶ 56, 70.

{¶ 13} On appeal to this court, Creatore and PNH argue that there is a presumption that Congress has not preempted state-law causes of action, so that federal law will not preempt state law unless the intent of Congress is clear and manifest. They contend that Congress has not expressed a clear and manifest intent to occupy the field of regulation regarding abusive litigation in federal

4

bankruptcy proceedings, emphasizing that it granted state courts jurisdiction concurrent with federal courts over claims, such as theirs, that do not concern substantive or "core" matters under the Bankruptcy Code and that are only "related to" bankruptcy cases. Creatore and PNH maintain that because Fed.R.Bankr.P. 9011 and Section 105(a), Title 11, U.S.Code, import only general principles of federal civil procedure to bankruptcy proceedings, courts have held that they do not have preemptive force. Further, they note that Section 303(i)(2), Title 11, U.S.Code, which authorizes damages for bad-faith filing of an involuntary-bankruptcy petition, does not apply to their claims. Thus, Creatore and PNH maintain that because the Bankruptcy Code does not provide a complete remedy for the injuries they suffered in this case, the court should not presume that Congress displaced the remedies for that misconduct afforded by state law.

{¶ 14} Alfa Laval responds that the claims brought by Creatore and PNH are premised on allegations that it violated federal law during the GO&B bankruptcy proceedings. It relies on decisions from the Sixth and Ninth Circuit Courts of Appeals and the Supreme Court of Pennsylvania for the proposition that state-law causes of action for misconduct and improper filings in bankruptcy court proceedings are preempted by federal law, which therefore provides the only remedies available for the injuries alleged in this case.

{¶ 15} The question presented here is one of first impression for this court: whether the United States Bankruptcy Code has preempted state-law claims for abuse of process and tortious interference with a contract when the alleged misconduct occurred during a bankruptcy court proceeding.

**Law and Analysis**

*Federal Preemption of State Law*

{¶ 16} The Supremacy Clause of the United States Constitution declares that "the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary

notwithstanding." Clause 2, Article VI, United States Constitution. Since the decision in *McCulloch v. Maryland* (1819), 17 U.S. 316, 427, 4 Wheat. 316, 4 L.Ed. 579, the United States Supreme Court has held that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana* (1981), 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576.

{¶ 17} The intent of Congress to override state law may be "explicitly stated in the statute's language." *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604. However, preemption may be implied if state law actually conflicts with federal law, "if federal law so thoroughly occupies a legislative field ' "as to make reasonable the inference that Congress left no room for the States to supplement it," ' " or if " 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447; *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting *Rice* at 230.

{¶ 18} In determining whether federal law preempts state law, " '[t]he purpose of Congress is the ultimate touchstone.' " *Malone v. White Motor Corp.* (1978), 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443, quoting *Retail Clerks v. Schermerhorn* (1963), 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179. Nonetheless, preemption analysis relies on "the assumption that the historic police powers of the States [are] not to be superseded by [federal law] unless that [is] the clear and manifest purpose of Congress." *Rice* at 230. As the Supreme Court reiterated in *Bates v. Dow Agrosciences, L.L.C.* (2005), 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687, quoting *Medtronic, Inc. v. Lohr* (1996), 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700, " '[b]ecause the States are independent sovereigns in our federal system, [the court has] long presumed that Congress does not cavalierly pre-empt state-law causes of action.' "

6

{¶ 19} Thus, unless Congress has manifested its intent to preempt state-law claims alleging the abuse of a bankruptcy court proceeding, "the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law." *BFP v. Resolution Trust Corp.* (1994), 511 U.S. 531, 544-545, 114 S.Ct. 1757, 128 L.Ed.2d 556.

*The Bankruptcy Clause and the Bankruptcy Code*

{¶ 20} In addition to granting to Congress the authority to preempt state laws, the Constitution empowers Congress "[t]o establish * * * uniform Laws on the subject of Bankruptcies throughout the United States." Clause 4, Section 8, Article I. The Supreme Court has therefore recognized that "the Bankruptcy Clause itself contains an affirmative limitation or restriction upon Congress' power: bankruptcy laws must be uniform throughout the United States." *Ry. Labor Executives' Assn. v. Gibbons* (1982), 455 U.S. 457, 468, 102 S.Ct. 1169, 71 L.Ed.2d 335.

{¶ 21} Because of "the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws," Congress enacted the Bankruptcy Code intending to create a comprehensive, uniform statutory scheme that is under federal control. *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (C.A.9, 1996), 74 F.3d 910, 915. For this reason, it vested federal district courts with original and exclusive jurisdiction over bankruptcy cases, including the involuntary-bankruptcy and adversary proceedings at issue in this case. Section 303, Title 11, U.S.Code; Section 1334(a), (b), and (e), Title 28, U.S.Code; *Cohen v. Bucci* (C.A.7, 1990), 905 F.2d 1111, 1112; *Glannon v. Garrett & Assoc., Inc.* (D.Kan.2001), 261 B.R. 259, 264; 1 Resnick & Sommer, Collier on Bankruptcy (16th Ed.2010) 3-5, ¶ 3.01[1].

{¶ 22} Nonetheless, there is a split of authority regarding whether the Bankruptcy Code preempts state-law causes of action that allow the recovery of damages for a litigant's abuse of a bankruptcy court proceeding.

{¶ 23} Some jurisdictions hold that these types of claims are not preempted by federal bankruptcy law. The Supreme Court of Texas recently held in *Graber v. Fuqua* (Tex.2009), 279 S.W.3d 608, that federal law does not preempt a state-law cause of action for malicious prosecution when a party seeks to recover for the wrongful filing of an adversary proceeding in bankruptcy court. The court recognized that the Bankruptcy Code establishes various remedies and sanctions to deter the abuse of bankruptcy proceedings. However, it distinguished between those provisions that Congress "custom-built" exclusively for bankruptcy proceedings, which manifest the intent of Congress to displace state-law claims, and those that it borrowed from the existing remedial scheme in federal civil litigation (such as sanctions under Fed.R.Civ.P. 11), which do not. Because Congress had not provided any custom-built remedies for the wrongful use of bankruptcy proceedings but had "merely imported the existing federal scheme," the court determined that Congress had not intended to preempt the malicious-prosecution claims brought in Texas state court. Id. at 615.

{¶ 24} The Supreme Court of Texas also rejected the argument that permitting such state-law claims would disrupt the uniformity of bankruptcy law, emphasizing that an action for malicious prosecution does not affect bankruptcy court proceedings because it "arise[s] only after the underlying case reaches a final judgment." Id. at 617. Therefore, the court concluded: "Allowing [this] claim to proceed in Texas courts neither conflicts with the federal laws that were expressed, nor does it hinder the advancement of the policies embodied therein. Because Congress was silent on the matter, we see no reason to discontinue state law's historic function of providing common law remedies for misconduct in federal courts." Id. at 620.

{¶ 25} Other jurisdictions have also decided that the Bankruptcy Code does not preempt state-law causes of action that provide remedies for misconduct committed in bankruptcy court proceedings. E.g., *U.S. Express Lines, Ltd. v.*

*Higgins* (C.A.3, 2002), 281 F.3d 383, 393 ("Despite the broad scope of remedies available in the Code and the general exclusivity of the federal courts in bankruptcy, we have held that a state claim for malicious abuse of process was not preempted"); *Shead v. Kelley* (S.D.Tex.2009), Civ. No. H-08-497, 2009 WL 4730398, *1 ("A state malicious prosecution claim is not preempted by federal bankruptcy [law] just because the claim arose out of the filing of an adversary action in a bankruptcy proceeding"); *In re Fornaro* (Bankr.D.N.J.2009), 402 B.R. 104, 110 ("The Court agrees with a recent Texas Supreme Court case decision, holding that malicious prosecution suits are not preempted, even though the claim arose in a bankruptcy action"); *R.L. LaRoche, Inc. v. Barnett Bank of S. Florida, N.A.* (Fla.App. 1995), 661 So.2d 855 (claims of abuse of process and malicious prosecution against a creditor for the bad-faith filing of an involuntary petition are not preempted by federal bankruptcy law).

**{¶ 26}** In contrast, courts in other jurisdictions reason that because the uniformity of bankruptcy law is a constitutional requirement as well as a practical necessity, Congress has implicitly preempted state-law tort claims that would allow recovery for misconduct committed in bankruptcy cases. See, e.g., *Pertuso v. Ford Motor Credit Co.* (C.A. 6, 2000), 233 F.3d 417, 426; *MSR Exploration*, 74 F.3d at 915; *Glannon v. Garrett & Assoc., Inc.* (D.Kan.2001), 261 B.R. 259, 265; *Koffman v. Osteoimplant Technology, Inc.* (D.Md.1995), 182 B.R. 115, 125; *Lewis v. Chelsea G.C.A. Realty Partnership, L.P.* (2004), 86 Conn.App. 596, 605, 862 A.2d 368; *Stone Crushed Partnership v. Kassab, Archbold, Jackson & O'Brien* (2006), 589 Pa. 296, 315, 908 A.2d 875.

**{¶ 27}** As the Sixth Circuit Court of Appeals explained in *Pertuso*, "[p]ermitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would 'stand[ ] as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress.' " 233 F.3d at 426, quoting *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581.

{¶ 28} Further, these jurisdictions generally recognize that not only would the threat of litigation in state court potentially chill the exercise of federal rights created by the Bankruptcy Code but also that state law would define the standard of conduct for litigants in federal bankruptcy court proceedings, establishing standards that vary from state to state and disrupt the uniformity of bankruptcy law that Congress had intended to promote. *MSR Exploration*, 74 F.3d at 915-916; *Glannon*, 261 B.R. at 265; *Stone Crushed Partnership*, 589 Pa. at 315, 908 A.2d 875.

{¶ 29} Courts adopting this view emphasize that Congress enacted a "complex, detailed, and comprehensive" statutory scheme that provides a number of remedies designed to preclude the misuse of the bankruptcy process. *MSR Exploration*, 74 F.3d at 914. Those remedies include sanctions for frivolous and harassing filings, Fed.R.Bankr.P. 9011; costs or attorneys fees on the dismissal of an involuntary petition, Section 303(i)(1), Title 11, U.S.Code; compensatory and punitive damages for bad-faith filing of involuntary petitions, Section 303(i)(2), Title 11, U.S.Code; and compensatory and punitive damages for willful violation of stays, Section 362(k), Title 11, U.S.Code, as well as judicial authority to prevent an abuse of process, Section 105(a), Title 11, U.S.Code. See generally *Koffman*, 182 B.R. at 124-125 (detailing the sanctions and remedies for misconduct provided by the Bankruptcy Code).

{¶ 30} These courts note that the existence of federal remedies demonstrates that Congress recognized the need to deter the abuse of bankruptcy proceedings and therefore did not overlook the need for additional deterrents or intend for states to supplement the federal remedies it provided. *MSR Exploration*, 74 F.3d at 915; *Stone Crushed Partnership*, 589 Pa. at 314, 908 A.2d 875. And to the extent that the Bankruptcy Code lacks a sufficient remedy for the

abuse of proceedings alleged in this case, litigants must look to Congress for redress. As the federal appellate court explained in *Gonzales v. Parks* (C.A.9, 1987), 830 F.2d 1033, 1036, "it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized."

**{¶ 31}** We adopt the reasoning of the jurisdictions that hold that the Bankruptcy Code preempts state-law causes of action for misconduct committed by litigants in bankruptcy court proceedings. Congress has established a comprehensive legislative scheme intended to promote the uniformity of bankruptcy law, which provides for federal remedies to deter the abuse of bankruptcy proceedings. Permitting additional state-law claims for misconduct occurring during a bankruptcy proceeding would, in our view, impermissibly disrupt the uniformity of bankruptcy law by establishing separate remedies for Ohio litigants in a field of law that Congress intended to occupy exclusively.

**{¶ 32}** For these reasons, the causes of action for abuse of process and tortious interference with a contract brought in this case are preempted by federal law because Creatore and PNH seek recovery for misconduct that they allege Alfa Laval committed during a bankruptcy court proceeding. Thus, these claims were properly dismissed by the trial court.

## Conclusion

**{¶ 33}** The United States Bankruptcy Code preempts state-law causes of action for misconduct committed by a litigant during a bankruptcy court proceeding. Accordingly, the court of appeals properly determined that the claims asserted by Creatore and PNH for abuse of process and tortious interference with a contract allegedly committed during a bankruptcy court proceeding are precluded by federal law, and its judgment is therefore affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, and MCGEE BROWN, JJ., concur.

LANZINGER and CUPP, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 34} I respectfully dissent from the majority's holding that "state-law causes of action for misconduct committed by a litigant during a bankruptcy court proceeding" are preempted by the Bankruptcy Code. I would hold that Alfa Laval has not borne its burden to show that the state-law claims for abuse of process and tortious interference with contract have been preempted by federal law.

{¶ 35} The majority concludes, as did the court of appeals, that by implication, Congress intended that the Bankruptcy Code would completely preempt state-law tort claims that seek a remedy for violations of bankruptcy procedure. But the United States Supreme Court has held that "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr* (1996), 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700; see also *Bates v. Dow Agrosciences, L.L.C.* (2005), 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687.

{¶ 36} Indeed, in a recent United States Supreme Court opinion, the court articulated a restrictive view of the authority of bankruptcy courts to enter certain final orders and explained that there are times when they must abstain in state matters. "[T]he framework Congress adopted in the 1984 Act already contemplates that certain state law matters in bankruptcy cases will be resolved by judges other than those of the bankruptcy courts. Section 1334(c)(2), for example, requires that bankruptcy courts abstain from hearing specified non-core, state law claims that 'can be timely adjudicated[] in a State forum of appropriate jurisdiction.' Section 1334(c)(1) similarly provides that bankruptcy courts may

abstain from hearing any proceeding, including core matters, 'in the interest of comity with State courts or respect for State law.' " *Stern v. Marshall* (2011), 564 U.S. ___, ___, 131 S.Ct. 2594, 2619–2620, 180 L.Ed.2d 475.

{¶ 37} Ohio recognizes both tortious interference with a contract and abuse of process as torts, and in my view, in a case in which neither party is the bankruptcy debtor and in which resolution of the litigation will not affect the bankruptcy estate, the state-court claims are not preempted by the federal bankruptcy law.

*Preemption Standard*

{¶ 38} As the majority explains, the key to the preemption inquiry is the intent of Congress. *Medtronic*, 518 U.S. at 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (the purpose of Congress is the ultimate touchstone in every preemption case). But there is also a well-established presumption against imputing to Congress an intention to preempt an area that traditionally has been left to state regulation. See *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604.

{¶ 39} Both torts that are claimed here cover areas that have been a matter of state regulation.

*The Tortious-Interference Claim*

{¶ 40} We first recognized the tort of tortious interference with a contract in *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863. "The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, paragraph one of the syllabus. We also noted that the establishment of the fourth element of the tort,

i.e., lack of justification, requires proof that the defendant's interference with another's contract was improper.  Id. at 176.

{¶ 41} In this case, the elements of the state-law claim of tortious interference with a contract arose before the filing and therefore encompass more than just a cause of action over improper bankruptcy.

*The Abuse-of-Process Claim*

{¶ 42} In Ohio, the elements of the tort of abuse of process are "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, paragraph one of syllabus.

{¶ 43} "In an abuse of process case, '[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.'  Prosser & Keeton on Torts (5 Ed.1984) 898, Section 121.  Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order."  *Robb v. Chagrin Lagoons Yacht Club, Inc.* (1996), 75 Ohio St.3d 264, 271, 662 N.E.2d 9.

{¶ 44} Moreover, the "legal proceeding" need not be within a state-court action.  See *Tilberry v. McIntyre* (1999), 135 Ohio App.3d 229, 733 N.E.2d 636 (abuse of process alleged in seeking sanctions in federal court); *White v. Goodman* (Jan. 4, 2001), 3d Dist. No. 9-2000-63, 2001 WL 9848 (abuse of process alleged in seeking reopening of bankruptcy case).  Here, the cause of action is brought after the fact for allegedly improper actions taken by a nondebtor against another nondebtor.

*Bankruptcy Court Jurisdiction*

**{¶ 45}** I believe that Congress's intent was not to totally preempt state-law claims of the type asserted in this case. The design of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333, recognizes the interests of the states in setting forth the jurisdictional considerations in bankruptcy cases.[1] First, it established that the federal district court has jurisdiction over all cases under Title 11 and in "all civil proceedings

---

1. {¶ a} Section 1334, Title 28, U.S.Code, provides in full:

{¶ b} "(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

{¶ c} "(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

{¶ d} "(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

{¶ e} "(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

{¶ f} "(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

{¶ g} "(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

{¶ h} "(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

{¶ i} "(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327."

arising under title 11, or arising in or related to cases under title 11." Section 1334(a) and (b), Title 28, U.S.Code. The district court, in turn, may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy court. Section 157(a), Title 28, U.S.Code. Under Section 1334(b), state courts retain jurisdiction over certain state-law causes of action. While district courts have "original *and* exclusive jurisdiction of all cases under title 11" (emphasis added), Section 1334(a), "the district courts shall have original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" (emphasis added), Section 1334(b). Furthermore, Congress instructed that bankruptcy courts should abstain from hearing certain state-law claims that are "related to" a case under Title 11 and can be timely adjudicated in state court. Section 1334(c)(2), Title 28, U.S. Code.

{¶ 46} Claims that arise under Title 11 or arise in or are related to a case under Title 11 are not necessarily preempted, for Congress has indicated that state courts retain concurrent jurisdiction in these matters. Generally, proceedings arising under Title 11 and proceedings arising in a case under Title 11 are referred to as "core" proceedings, whereas proceedings "related to" a case under Title 11 are referred to as "noncore" proceedings. See *In re Resorts Internatl., Inc.* (C.A.3, 2004), 372 F.3d 154, 162, citing 1 Collier on Bankruptcy (15th Ed.Rev.2003) 3-35, ¶ 3.02[2].

{¶ 47} A claim "arises in" a case under the Bankruptcy Code only if the claim would have "no existence outside of the bankruptcy." *In re Riverside Nursing Home* (S.D.N.Y.1992), 144 B.R. 951, 955; see also *In re Seven Fields Dev. Corp.* (C.A.3, 2007), 505 F.3d 237, 260, quoting *Stoe v. Flaherty* (C.A.3, 2006), 436 F.3d 209, 218 (explaining that " 'claims that "arise in" a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case' ").

**{¶ 48}** In this case, to be sure, the bankruptcy matter served as the vehicle for these tort actions to arrive in state court. However, claims such as this brought by a nondebtor against a nondebtor are not claims that by their nature could arise only in the context of a bankruptcy case. To the contrary, they are often brought and adjudicated in state court. On the other hand, a bankruptcy court has "related to" jurisdiction over an adversary proceeding if the proceeding "might have any 'conceivable effect' on the bankruptcy estate." *In re Cuyahoga Equip. Corp.* (C.A.2, 1992), 980 F.2d 110, 114.

**{¶ 49}** The cases cited by the majority are generally those in which a debtor has filed a state-law tort claim as a result of the alleged improper bankruptcy filing—a core proceeding. *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (C.A.9, 1996), 74 F.3d 910 (debtor sued creditor in state court for malicious prosecution due to bankruptcy). But that is not the case here.

*Appellants' claims are noncore and are unrelated to the bankruptcy estate*

**{¶ 50}** This is not a debtor's action that asserts improper filing of an involuntary-bankruptcy petition. The debtor, Girton, Oakes & Burger, Inc., is not a party to the state litigation. There is no dispute that all litigants—appellants, Ronald Creatore and PNH, Inc., and appellee, Alfa Laval Flow, Inc., were nondebtors.

**{¶ 51}** It is undisputed that the three individuals, Creatore, David Barnitt, and William Sayavich, who formed a holding company to buy GO&B stock, had a noncompetition confidentiality agreement among themselves. Allegedly, Barnitt and Sayavich, disgruntled over their termination by Creatore, contacted Alfa Laval and at its behest and in violation of the contract's confidentiality provisions, of which Alfa Laval allegedly was aware, disclosed confidential information to it.

**{¶ 52}** Appellants based their tortious-interference claim on Alfa Laval's alleged prepetition solicitation of confidential information and claimed that

they were damaged when Alfa Laval attempted to use this information to prevent them from competing by bringing them into the bankruptcy through the adversarial complaint. As the order of the bankruptcy judge noted, "Debtor Girton, Oakes &Burger ('Debtor') is not a party to the State Court Case, and the State Court Case does not affect any property of the estate." The claims do not involve the debtor and do not implicate the estate.

*Uniformity of Bankruptcy Law*

{¶ 53} The majority holds that the state-law causes of action in this case are preempted due to the concern that allowing separate state-law remedies would impermissibly disrupt the uniformity of bankruptcy laws. But this case involves only nondebtors; therefore, the danger to the uniformity of the bankruptcy law is minimal. Also, the actions that gave rise to the claim of tortious interference with a contract occurred before the involuntary-bankruptcy petition was filed. Therefore, it is doubtful that the resolution of this claim will involve interpretation of bankruptcy law.

{¶ 54} Even if some interpretation of bankruptcy law is involved, that does not mean that uniformity of the bankruptcy law will be disrupted. As the Texas Supreme Court recently stated, "[t]he uniformity argument for preemption is not triggered by the mere fact that a claim requires state courts to interpret federal bankruptcy law." *Graber v. Fuqua* (2009), 279 S.W.3d 608, 619. Although the Constitution grants Congress the authority to enact bankruptcy laws that are uniform throughout the United States, Clause 4, Section 8, Article I, the United States Supreme Court has recognized that the uniformity requirement should not be treated as a straitjacket. *Ry. Labor Executives' Assn. v. Gibbons* (1982), 455 U.S. 457, 469, 102 S.Ct. 1169, 71 L.Ed.2d 335. Rather, "[a] bankruptcy law may be uniform and yet 'may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States.' " Id., quoting *Stellwagen v.*

18

*Clum* (1918), 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507. Because Congress has not chosen to enact laws that entirely eliminate the different state-law claims that could provide remedies for misconduct in bankruptcy proceedings between nondebtors, the state-law claims in this matter should not be considered preempted.

### Conclusion

{¶ 55} In ruling that there is preemption by implication in this case, the majority fails to give weight to the Bankruptcy Code's language regarding the concurrent jurisdiction of state courts. In my view, rather than cede power to federal courts by saying that these state-law tort claims are completely preempted, we should allow these cases to stand on their own in state court.

{¶ 56} Because I do not believe that our sovereign state law should be broadly relinquished to the federal courts solely upon an implication of preemption, I respectfully dissent.

CUPP, J., concurs in the foregoing opinion.

_____

Witschey, Witschey & Firestine Co., L.P.A., Jeffrey T. Witschey, Alex J. Ragon, and Betsy L. B. Hartschuh, for appellants.

Hanna, Campbell & Powell, L.L.P., James M. Lyons Jr., Robert L. Tucker, and Frank G. Mazgaj, for appellee.

_____