946 F.2d 895
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George LIADIS, Plaintiff-Appellant,
v.
Christopher P. FEKOS, Defendant-Appellee.
 No. 91-3184.
 United States Court of Appeals, Sixth Circuit.
 Oct. 7, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 George Liadis sued Christopher Fekos claiming that Fekos fraudulently obtained a judgment in Pennsylvania state court on a cognovit note executed by Liadis. Fekos argued that Liadis's claim was barred by res judicata and moved for summary judgment. The district court granted summary judgment in favor of Fekos giving rise to the present appeal. For the following reasons, we affirm.
 
 
 2
 This is the latest in a series of lawsuits between Fekos and Liadis. The root of the present appeal is whether or not, in the multitude of prior litigation between Liadis and Fekos, Liadis had an earlier opportunity to raise the present claim. The district court found that Liadis did have such an opportunity and so Liadis is barred from bringing the instant action. The following chronology of events is helpful:
 
 
 3
 11/23/82 Liadis subcontracts with Fekos to do construction work under Fekos's contract with the Army. Liadis executes a cognovit note to secure his performance.
 
 
 4
 1/18/83 Fekos obtains a judgment against Liadis on the cognovit note in Pennsylvania ["the Pennsylvania case"].
 
 
 5
 1/28/83 Fekos files a complaint in Ohio state court seeking a judgment for $130,000 based on the Pennsylvania judgment ["the Ohio case"].
 
 
 6
 2/28/83 Liadis's brother, on behalf of George Liadis, answers the 1/28 complaint. Liadis claims that neither George nor his father (the other defendant in both the Ohio and Pennsylvania case) knew of the Pennsylvania case or the judgment, and that the judgment is "not justly nor truly due."
 
 
 7
 Early '84 Liadis filed suit in Virginia federal district court seeking payment under the construction contract's terms ["the Virginia case"].
 
 
 8
 8/24/84 The Virginia federal court action is dismissed with prejudice on joint motion by the parties.
 
 
 9
 9/6/84 Liadis substitutes William Brown as attorney, in place of Pete Mattis, in the Ohio case.
 
 
 10
 2/28/85 Fekos moves for summary judgment in the Ohio case claiming that Liadis's claim for "irregularity" of the Pennsylvania judgment should be made in Pennsylvania. This motion was apparently never responded to by the court given the events of 3/27/85.
 
 
 11
 3/27/85 Liadis executes and causes to be filed the stipulated judgment between the parties. The judgment awards Fekos $130,000 but is expressly conditioned upon the Pennsylvania judgment not being "opened, reversed or otherwise vacated." Any question as to whether the Pennsylvania judgment should be opened, etc. should be litigated in Pennsylvania courts.
 
 
 12
 8/18/88 Liadis brings this suit in Ohio federal district court.
 
 
 13
 6/6/90 District court rejects Fekos's motion to dismiss without prejudice and suggests Fekos file his next motion with supporting documents.
 
 
 14
 1/15/91 Fekos' motion for summary judgment is granted by the district court.
 
 
 15
 First, Liadis claims that Fekos never provided proper additional evidence that would establish that the issues of fraud or breach of trust had already been raised and adjudicated on the merits prior to this lawsuit. Liadis also claims that he was not represented by counsel when entering into the stipulated judgment.
 
 
 16
 Fekos, in support of his motion for summary judgment, submitted copies of several documents previously filed in the Ohio or Pennsylvania cases. The court found these documents were self-authenticating because they were filed in a "public office" and stamped or certified by court employees. Based upon this documentation, the court found, as a matter of fact, that Liadis was aware of the Pennsylvania judgment by at least February 28, 1983. Further, although the February 28, 1983 response was filed by Liadis's brother, and not an attorney, the court found that other documents submitted by Fekos indicate that Liadis was sufficiently represented by counsel at various points during the litigation. The district court's factual determination in both these preliminary matters appears to be supported by the chronology of events described above and does not constitute reversible error.
 
 
 17
 Liadis claims that the stipulated judgment was not a determination on the merits and, thus, cannot have res judicata effect. The stipulated judgment states that, "should said Pennsylvania judgment hereafter be opened, reversed or otherwise vacated, the judgment rendered herein will to the same extent be so opened, reversed or vacated."
 
 
 18
 In Johnson's Island, Inc. v. Board of Township Trustees, 69 Ohio St.2d 241, 243 (1982), the Ohio Supreme Court held that "[a] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts ... and is a complete bar to any subsequent action upon the same cause of action...." This is true, as well, of stipulated or consent judgments, which have the same finality and conclusiveness of any other judicial determination. Liadis purports that stipulated judgments are somehow less than judicially determinative; Ohio cases indicate, however, that stipulated judgments are equivalent to any other judicial determination on the merits. See First Nat'l Bank in St. Petersburg v. Hoffman, 1991 WL 18686, slip op. (Oh.App.1991) (stipulated judgment provides monetary award of almost $225,000); Cashelmara Condominium Unit Owners Ass'n v. Cashelmara Co., 1990 WL 180645, slip op. (Oh.App.1990) (stipulated judgment determines liability of parties); Ohio Bar Liability Ins. Co. v. INA Underwriters Ins. Co., 1990 WL 173456, slip op. (Oh.App.1990) (case was settled by a stipulated judgment and order in which California retained jurisdiction to enforce the agreement).
 
 
 19
 Alternatively, Liadis claims that compulsory counterclaims "cannot" be res judicata barred. In an effort to support this claim, Liadis misstates Reynolds v. Hartford Accident Indemnity Co., 278 F.Supp. 331 (S.D.N.Y.1967). The Reynolds court found that the "Rule governing compulsory counterclaims should be read as barring them on estoppel or waiver basis rather than on merger or res judicata basis." Id. As this quotation clearly indicates, the district court indicated a desire that compulsory counterclaims be barred on estoppel or waiver grounds, rather than res judicata grounds. The Reynolds court, however, did not imperatively hold that such claims "cannot" be barred on res judicata grounds. Counter to Liadis's assertion, Reynolds does not nullify the compulsory counterclaim rule by requiring trials in all cases and by prohibiting stipulated judgment entries. As the district court observed and as a sampling of Ohio law reveals, compulsory counterclaims most certainly do have res judicata effect. See Quintus v. McClure, 536 N.E.2d 22, 23 (1987); Geauga Truck & Implement Co. v. Juskiewisz, 457 N.E.2d 827, 828 (1984). See also Rule 13(a) of Ohio Rules of Civil Procedure and 13(a) of the Federal Rules of Civil Procedure (compulsory counterclaims arise out of the transaction or occurrence that is the subject matter of the opposing party's claim; a default judgment can have res judicata effect with regard to a compulsory counterclaim asserted under 13(a)).
 
 
 20
 Liadis argues that Fekos will be allowed to perpetrate a fraud if the court finds Liadis's claim barred by res judicata. Liadis cites to Whitehead v. General Telephone Co., 254 N.E.2d 10, 11 (1969), where the court found that "[a] final judgment or decree rendered upon the merits without fraud or collusion by a Court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies and is a complete bar to any subsequent actions...." Liadis emphasizes the Whitehead court's stipulation that a final judgment be "without fraud." Thus, Liadis claims, principles of equity require us, even if we find res judicata a technical bar to this suit, to allow Liadis's suit nonetheless. To the contrary, we find that equity does not require us to override the bar created by res judicata in this case, given the chronology of litigation between Liadis and Fekos.
 
 
 21
 The district court's disposition of this case squarely addresses the res judicata question in all its forms:
 
 
 22
 Having failed to take action in the Pennsylvania court to set aside the judgment, or having unsuccessfully taken action to do so, plaintiff cannot now seek such relief in this Court.
 
 
 23
 Plaintiff had a full and fair opportunity in the Ohio case to litigate his claim that the Pennsylvania judgment was fraudulently obtained and his claim that defendant's conduct constituted a breach of trust. Additionally, after the Virginia case was settled, plaintiff had the opportunity in the Ohio case to argue that defendant's further efforts to collect on the Pennsylvania judgment were barred by the settlement in the Virginia case. For purposes of the Ohio case, both of these issues were resolved by the stipulated judgment against plaintiff, contingent upon the Pennsylvania judgment not being opened, reversed or otherwise vacated. Plaintiff is bound by the terms of the stipulated judgment entry, and since the Pennsylvania judgment was never set aside as to plaintiff, the Ohio judgment is binding on plaintiff and on this Court.
 
 
 24
 As the district judge observed, Liadis has "had a full and fair opportunity" to litigate his fraud claim. Liadis should not be given another free shot at bringing a cause of action for fraud against Fekos.
 
 
 25
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation