*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0298p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DIONTE TYLER,

           *Plaintiff-Appellant,*

    *v.*

No. 13-5021

DH CAPITAL MANAGEMENT, INC.,

           *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:12-cv-00129—Charles R. Simpson III, District Judge.

Argued: July 25, 2013

Decided and Filed:  October 22, 2013

Before:  BOGGS and SILER, Circuit Judges; and DOWD, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** James McKenzie, PEDLEY & GORDINIER, PLLC, Louisville, Kentucky, for Appellant.  John R. Tarter, MAPOTHER & MAPOTHER, P.S.C., Louisville, Kentucky, for Appellee.  **ON BRIEF:** James McKenzie, PEDLEY & GORDINIER, PLLC, Louisville, Kentucky, for Appellant.  John R. Tarter, MAPOTHER & MAPOTHER, P.S.C., Louisville, Kentucky, for Appellee.

———————————

## OPINION

———————————

BOGGS, Circuit Judge.  Dionte Tyler brought this action under the Fair Debt Collection Practices Act (FDCPA) and Kentucky's usury laws, alleging that the debt-collection action instituted by DH Capital Management (DHC) sought to collect an

---

[*]The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

amount to which DHC was not legally entitled. The district court dismissed the suit, because it was procedurally barred as not having been raised previously as a counterclaim, and because Tyler's bankruptcy trustee, not Tyler, was the proper party in interest. This appeal raises various issues of procedural timing, which arise out of an unusual order of events caused by the interaction between DHC's collection suit and Tyler's declaration of bankruptcy. In particular, we must answer 1) whether Tyler's suit is barred for failure to raise his claims as counterclaims in the original debt-collection action, during the brief period before it was voluntarily dismissed and 2) whether Tyler's suit is a pre-petition cause of action that only his bankruptcy trustee has authority to pursue. We find that the district court erred in holding that Tyler's claim was barred under *res judicata* principles, but agree that Tyler's claim is based on a pre-petition violation and thus is property of the bankruptcy estate. As a result, we affirm the judgment of the district court.

## I

By 2009, Tyler had accumulated $1,041.89 of debt on his Chase Bank credit card. On October 14, 2010, Chase Bank assigned the debt to Turtle Creek Assets, LTD. Turtle Creek assigned Tyler's debt, along with 200 other accounts, to DHC on October 26, 2010. On March 23, 2011, DHC filed suit against Plaintiff in state court in Jefferson County, Kentucky, seeking collection of the debt, plus 21% interest from February 27, 2009, and reasonable attorney's fees. The complaint was not yet served.

Tyler filed for Chapter 7 bankruptcy on June 28, 2011, three months after the debt-collection suit was filed. Because Tyler had not yet been notified of DHC's debt-collection suit or served with process, Tyler did not list this suit as debt or his potential FDCPA counterclaims as assets on the original bankruptcy schedules. It is unclear whether the debt to Chase Bank was listed in his original schedules; while Tyler did list a debt owed on a Chase Bank credit card (of "Unknown" amount), DHC asserts that the account number for the debt it holds is different. Electronic notice of that debt was provided to Chase, although there is no record of involvement by Chase in the

bankruptcy proceeding. No further amendments were made to the schedules indicating the amount of the unknown debt, and Tyler was granted a discharge on October 4, 2011.

Eight days later, on October 12, DHC served process on Tyler in the debt-collection action. On October 18, DHC filed a voluntary Notice of Dismissal without prejudice after it learned of Tyler's bankruptcy. On October 20, Tyler filed his answer, denying all allegations. As affirmative defenses, he asserted that the claim was stale, that the account was non-existent, and provisionally any other defenses "to be determined during [] discovery." On October 26, the court entered DHC's Notice of Dismissal, dismissing the case without prejudice. On March 9, 2012, Tyler filed the instant case, a class action that alleged violations of the FDCPA and Kentucky's usury laws. In particular, he alleged that the 21% interest rate sought was usurious[1] and that DHC was not entitled to collect attorney's fees or interest before the date of acquiring the debt, since DHC was only assigned a right to the receivables, not the underlying contract.

DHC subsequently filed a motion to dismiss, arguing that the claims were barred by Tyler's failure to present them as counterclaims in the prior state-court action, and that Tyler had no standing because the cause of action was property of the bankruptcy estate. The district court granted the motion on both grounds, finding that 1) Tyler "elected to forego filing compulsory counterclaims" and 2) that Tyler's claims were "rooted in the allegations in DHC's state court complaint" and thus part of the bankruptcy estate. In the alternative, the district court held that because Tyler failed to amend his bankruptcy forms to include the collection suit, his claims belonged to the bankruptcy trustee. Tyler appeals.

---

[1] Kentucky law provides that "The legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate as follows: (a) at a per annum rate not to exceed four percent (4%) in excess of the discount rate on ninety (90) day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve District where the transaction is consummated or nineteen percent (19%), whichever is less, on money due or to become due upon any contract or other obligation in writing where the original principal amount is fifteen thousand dollars ($15,000) or less." Ky. Rev. Stat. § 360.010. Tyler assumes that 19% is the legal limit, although the statute appears to limit the rate of interest to the *lesser*, not the greater, of 4% plus the commercial paper rate and 19%. The commercial paper rate (plus 4%) has not been greater than 19% since 1981, and has not even exceeded the legal rate of interest since 2007. *See* Federal Reserve, *Selected Interest Rates (Daily) - H.15, Historical Data*, http://www federalreserve.gov/releases/h15/data htm. In any case, 21% is above the limit.

## II

We review de novo a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Estate of Barney v. PNC Bank, N.A.*, 714 F.3d 920, 924 (6th Cir. 2013). On review, we "accept all allegations in the complaint as true" and "determine whether the allegations plausibly state a claim for relief." *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011).

The district court dismissed Tyler's claims under Federal Rule of Civil Procedure 13, reasoning that they were compulsory counterclaims that Tyler failed to assert in DHC's collection suit. Rule 13(a) provides that a responsive pleading "must" assert a compulsory counterclaim; a compulsory counterclaim that "is not brought is thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974). Tyler argues that, in a case voluntarily dismissed without prejudice, unraised compulsory counterclaims should not be subsequently barred.[2] Although there will be situations where such claims are barred, on the facts in this case Tyler's claims can go forward. There are a few reasons why this is so, but in essence the case had not proceeded to a sufficiently advanced stage to warrant application of the bar.

## A

First, as DHC filed a notice of dismissal "before service by the adverse party of an answer," the claim could be dismissed "without order of court." Ky. R. Civ. P. 41.01(1). Under the terms of Federal Rule 13, a compulsory counterclaim is asserted in a "pleading." Fed. R. Civ. P. 13(a)(1). Where the adverse party has no opportunity to file a pleading, it has no opportunity to assert its counterclaim, and thus its claim will not be barred. This rule applies more broadly than just to voluntary dismissals: a party is not required to assert a counterclaim where it successfully files a pre-answer motion to dismiss. *United States v. Snider*, 779 F.2d 1151, 1157 (6th Cir. 1985). "Without a valid claim there can be no counterclaim, compulsory or permissive." *Ibid*.

---

[2]Tyler also has objected for the first time on appeal to the characterization of his claims as compulsory counterclaims. Because Tyler failed to raise these arguments below, he has not preserved the issue for appellate review. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

Nevertheless, the district court reasoned that the "timing of Tyler's responsive pleading is immaterial." The court pointed to Tyler's failure to present his claims at any relevant time and explained that under Kentucky Rule 13.09 counterclaims may survive dismissal of the opposing party's claims. This line of reasoning misconceives how Federal Rule 13 works. Rule 13 serves the purpose of bringing all relevant claims before the court in a single action, *Snider*, 779 F.2d at 1157, but is not a tool for plaintiffs to force defendants' counterclaims into court prematurely, *Lawhorn v. Atl. Refining Co.*, 299 F.2d 353, 357 (5th Cir. 1962) (noting the "general proposition that a claimant should be able to choose his own forum" and concluding that "[i]f one hauled into Court as a defendant has a claim but the adversary plaintiff has not, the nominal defendant ought to be allowed to name the time and place to assert it.") Where a claim has been dismissed, Rule 13 imposes no obligation to respond or oppose the dismissal. This is especially true when the action has been unilaterally dismissed without the need for court approval.

The facts in this case are unusual in that Tyler actually did file an answer, two days after DHC's notice of dismissal, and the court did not enter an order of dismissal for another six days. A review of Kentucky law, however, confirms that—consistent with a plain reading of the rule—a Rule 41.01 notice of dismissal is effective immediately. *See Whaley v. Whitaker Bank, Inc.*, 254 S.W.3d 825, 828–829 (Ky. Ct. App. 2008) ("[V]oluntary dismissal . . . is self-executing . . . . That document itself closes the file. . . . [W]e conclude that the Whaleys' case was dismissed without prejudice, effective immediately upon their filing of the notice on May 8, 2007.") (internal quotation marks omitted). As a result, the case was closed before Tyler filed his answer, and thus its content is immaterial. Likewise, the court's subsequent order did not have legal effect, other than to confirm that DHC's October 18th dismissal was properly taken. Indeed, the court had no discretion to do otherwise: the court had no power to deny dismissal when given notice before service of the answer, nor did the court have the power to grant dismissal under Rule 41.01(1) after service of the answer.

For the court to grant post-answer dismissal, DHC would have had to file a new motion to dismiss under Rule 41.01(2), to which Tyler could have objected.[3]

**B**

Second, even if we consider Tyler's failure to plead any specific counterclaims in his answer, the principles of *res judicata* (claim preclusion) only apply to adjudications on the merits. Federal courts are required to "give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518 (1986). In Kentucky, "[f]or claim preclusion to bar further litigation . . . the action must have been resolved on the merits." *Yeoman v. Kentucky*, 983 S.W.2d 459, 465 (Ky. 1998). Dismissals without prejudice are not treated as decisions on the merits. *See Yocom v. Hayden*, 566 S.W.2d 776, 779 (Ky. Ct. App. 1978) ("It is a general rule that a dismissal without prejudice does not preclude the maintenance of a subsequent action on the same facts."). Here, there is no question that the case was dismissed without prejudice, before any litigation on the merits whatsoever. Just as DHC is not barred from bringing its collection action, Tyler would not be barred from asserting his counterclaims.

In certain cases, barring an unraised compulsory counterclaim might be appropriate even if *res judicata* does not apply. The Rule 13 bar is motivated not only by *res judicata* principles, but also waiver and estoppel. *See Liadis v. Fekos*, 946 F.2d 895 (table), 1991 WL 203754, at *2 (6th Cir. 1991); *Carnation Co. v. T.U. Parks Const. Co.*, 816 F.2d 1099, 1103 (6th Cir. 1987) ("[I]n some cases in which a claim is held to be barred the doctrine of res judicata does not fit and . . . the waiver or estoppel theory allows more discretion not to hold the claim is barred where to do so is manifestly unjust."). For example, where a district court refuses to consider a belated counterclaim

---

[3]Tyler made this point in his opposition to the motion to dismiss; DHC characterizes this "reinterpretation" of Rule 41.01 as "self serving." *See* Appellee's Br. at 17. Tyler did not reinterpret Rule 41.01, but instead explained that he wins regardless of whether the dismissal is treated as pre- or post-answer. If the dismissal were pre-answer, Tyler's answer would be a nullity. If the dismissal were post-answer, the court did not follow the proper procedure in dismissing the case. While pre-answer dismissals can be accomplished with a "notice," post-answer dismissals require a "motion." Ky. R. Civ. P. 41.01(1)–(2). Since DHC did not file a motion, the court could not dismiss the case.

raised long into a protracted litigation, it may be appropriate to bar consideration of that claim afresh in a new suit. *Cf. New Britain Mach. Co. v. Yeo*, 358 F.2d 397, 411 (6th Cir. 1966) ("[T]he district court was not required to permit New Britain to relitigate the case, either by a belated counterclaim or by a new and separate action."). Such considerations, however, are inapplicable here. Even if Tyler's answer is considered actually filed, the case was dismissed shortly thereafter. The Kentucky Rules of Civil Procedure permit amendment of an answer "as a matter of course" within 20 days of service, or "when justice so requires" at any later time. Ky. R. Civ. P. 15.01. If this case had proceeded through discovery without the assertion of FDCPA and usury counterclaims, it would be appropriate to consider waiver and estoppel. But after a voluntary dismissal under Rule 41.01(1), neither the strict rules of *res judicata* nor the equitable principles of waiver and estoppel warrant barring an unraised counterclaim.

## III

### A

Even though Tyler's claims are not barred, he faces a second hurdle: "all legal or equitable interests of the debtor in property as of the commencement of the case" are considered property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). As a result, only the bankruptcy trustee has standing to pursue pre-petition causes of action. *See Stevenson v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 853 (6th Cir. 2002). We must answer, therefore, precisely when Tyler's claims became "interests . . . in property." Tyler argues that his claims did not accrue until he was served; DHC argues, and the district court found, that Tyler had a property interest at least by the time DHC filed its complaint.

### 1

Determining the time at which a cause of action becomes bankruptcy property is not straightforward. The nature and extent of property rights in bankruptcy are

determined by the "underlying substantive law."[4] *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000). But "once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate" for the purposes of § 541. *Bavely v. United States* (*In re Terwilliger's Catering Plus, Inc.*), 911 F.2d 1168, 1172 (6th Cir. 1990).

"Property" is construed "generously" under the Bankruptcy Code. *Segal v. Rochelle*, 382 U.S. 375, 379 (1966). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Azbill v. Kendrick* (*In re Azbill*), 385 B.R. 799 (table), 2008 WL 647407, at *7 (6th Cir. BAP 2008) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993)). Consequently, most courts analyze whether the asset is "sufficiently rooted in the pre-bankruptcy past" of the debtor. *Mueller v. Hall* (*In re Parker*), 368 B.R. 86 (table), 2007 WL 1376081, at *7 (6th Cir. BAP 2007) (quoting *Segal*, 382 U.S. at 380); *In re Edmonds*, 263 B.R. 828, 830 (E.D. Mich. 2001); *In re Richards*, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000) ("The 1978 Bankruptcy Code follows *Segal* to the extent that it includes after acquired property 'sufficiently rooted in the pre-bankruptcy past' but eliminates the requirement that it not be entangled in the debtor's ability to make a fresh start."); *Mgmt. Investors v. United Mine Workers of Am.*, 610 F.2d 384, 391 (6th Cir. 1979). *See also Jackson v. Novak* (*In re Jackson*), 593 F.3d 171, 176 (2d Cir. 2010); *Beaman v. Shearin* (*In re Shearin*), 224 F.3d 346, 351 (4th Cir. 2000); *In re Meyers*, 616 F.3d 626, 628 (7th Cir. 2010); *Longaker v. Boston Scientific Corp.*, 715 F.3d 658, 662 (8th Cir. 2013); *Martinez v. Lincoln Gen. Ins. Co.*, 417 F. App'x 711, 712 (9th Cir. 2011); *Parks v. Dittmar* (*In re Dittmar*), 618 F.3d 1199, 1208 (10th Cir. 2010). *But see Burgess v. Sikes* (*In re Burgess*), 438 F.3d 493, 498 (5th Cir. 2006) (en banc) ("[A]lthough Congress has specifically approved of *Segal*'s result, *Segal*'s 'sufficiently rooted' test did not survive the enactment of the [1978] Bankruptcy Code.") (footnote omitted); *Bracewell v. Kelley* (*In re Bracewell*), 454 F.3d 1234, 1242 (11th Cir. 2006) ("The § 541(a)(1) definition, with its explicit temporal limitation, controls our analysis rather than *Segal*'s test.").

---

[4] This underlying law may be state (e.g., usury) or federal (e.g., FDCPA). *See Pardo v. Pacificare of Texas, Inc.* (*In re APF Co.*), 264 B.R. 344, 356 (Bankr. D. Del. 2001).

How this test should be applied to causes of action is the subject of further disagreement. Some courts have applied the test expansively, including contingent and unripe claims as property of the estate. *See, e.g.*, *Mueller*, 2007 WL 1376081, at *8 (holding that legal-malpractice claim became part of estate at time of negligence, not when damages are incurred). Others have treated the test as equivalent to the determination of when the cause of action accrues under the substantive law. *See, e.g.*, *Witko v. Menotte* (*In re Witko*), 374 F.3d 1040, 1044 (holding that legal-malpractice claim was not part of estate since harm from the attorney's pre-petition failures did not occur until after filing the petition). Both sides, however, agree to some basic boundaries to this test.

First, pre-petition conduct or facts alone will not "root" a claim in the past; there must be a pre-petition violation. *See, e.g.*, *Cook v. Baca*, 512 F. App'x 810, 820 (10th Cir. 2013) ("Though . . . the alleged conspiracies involved property that was the subject of dispute between the parties prior to the bankruptcy filing, the alleged constitutional injuries did not exist prior to the filing."); *Pettibone Corp. v. Ramirez* (*In re Pettibone Corp.* ), 90 B.R. 918, 932 (Bankr. N.D. Ill. 1988) ("Conversely, if a tort claimant whose employer had purchased a defective product pre-petition is exposed only post-petition to that product . . . the claimant's bankruptcy claim arises post-petition."). In this case, for example, the mere fact that the debt was incurred years before the bankruptcy is irrelevant to the analysis—the question is when the violation occurred.

Second, all causes of action that hypothetically could have been brought pre-petition are property of the estate. *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 n.5 (3d Cir. 2002). This is the case "even if the debtor[] w[as] unaware of the claim." *In re Michael*, 423 B.R. 323, 330 (Bankr. D. Idaho 2009); *see also Blakely v. Alvarez* (*In re Alvarez*), 224 F.3d 1273, 1276 n.7 (11th Cir. 2000). Further, the entire cause of action is property of the estate, even if further post-petition damages were incurred. *See Wischan v. Adler* (*In re Wischan*), 77 F.3d 875, 878 (5th Cir. 1996) (declining to apportion pain-and-suffering losses from pre-petition personal injury claims into pre- and post-petition amounts); *Jenkins v. A.T. Massey Coal*

*Co.* (*In re Jenkins*), 410 B.R. 182, 192 (Bankr. W.D. Va. 2008) (holding tort of outrage claim to be property of the estate, even where distress did not rise to an actionable level until post-petition); *In re Ballard*, 238 B.R. 610, 624 (Bankr. M.D. La. 1999) ("The cause of action for lost post-petition wages is itself a pre-petition interest in property."). Given the nature of Tyler's claims, application of these two principles is sufficient to resolve the instant case; we need not answer whether a cause of action, one or more of whose elements have not been satisfied at time of the petition, may become pre-petition property.

**2**

As to Tyler's FDCPA claim, the question is whether an actionable violation occurred at (or before) the time of DHC's filing a complaint, thus bringing the claim into the bankruptcy estate. The FDCPA prohibits various kinds of unfair debt-collection practices, many of which do not involve the legal process. *See, e.g.*, 15 U.S.C. § 1692d(5) (harassing phone calls). These claims are easily dated to the time of the violation. The FDCPA also prohibits, however, an "attempt to collect any debt" not permitted by contract or law and the false representation of the "the character, amount, or legal status of any debt." 15 U.S.C. §§ 1692e(2)(A), 1692f(1). These violations may occur by the prosecution of a legal action. *See Heintz v. Jenkins*, 514 U.S. 291 (1995) (holding that the FDCPA applies to litigation activities). The difficult question is whether the violation occurs at the filing of the complaint, or only once the debtor is served with the complaint. Multiple courts have addressed the question of when the statute of limitations begins to run. *See Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002) (runs at service of process); *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (runs at filing). Although some of the reasoning in these opinions is helpful, accrual for the purposes of § 541 is different from accrual for statute-of-limitations purposes. *See State Farm Life Ins. Co. v. Swift* (*In re Swift*), 129 F.3d 792, 798 (5th Cir. 1997). In support of his position, Tyler has cited only one case that does not deal with statute-of-limitations accrual. *Bynum v. Cavalry Portfolio Svcs., L.L.C.*, No.

04CV0515CVEPJC, 2005 WL 2789199, at *3 (N.D. Okla. Sept. 29, 2005) ("[I]n order to maintain an action under the FDCPA, a plaintiff must have been served.").

This is a close question. The *Johnson* case clearly presents one side of the argument:

> If the debt collector files suit against the FDCPA plaintiff but then elects to call off the process server and abandon the collection suit before the plaintiff has been served, it cannot be said that the abandoned lawsuit constitutes an "attempt to collect" on the debt within the meaning of the FDCPA, 15 U.S.C. § 1692f. . . . Of course, the fact that a party that has committed half an actionable wrong is likely to commit the other half cannot suffice to create a complete and present cause of action.

*Johnson*, 305 F.3d at 1113-14. The persuasiveness of *Johnson* to this case, however, is weakened due to its reliance on another consideration that is only applicable in the statute-of-limitations context: if the limitations clock ran from filing, a debt collector "could effectively block any action under the [FDCPA] by filing suit and then delaying service." *Id.* at 1114. For the following reasons, we hold—contrary to *Johnson*—that a violation may occur at filing, and thus Tyler's FDCPA cause of action is pre-petition property of the estate.

First, filing a complaint may cause actual harm to the debtor: a pending legal action, even pre-service, could be a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers. The debt collector may also use the pending legal action to pressure a debtor to pay back the debt informally, without serving the complaint—precisely the type of unfair practice prohibited by the FDCPA. *See* 15 U.S.C. § 1692e(5) ("The threat to take any action that cannot legally be taken or that is not intended to be taken.").

Second, the alternative to dating violations from the filing of the complaint can become factually complicated. An "attempt to collect" will often occur before service of process. A debt collector who attempts to serve process but does not follow proper procedure or fails to find the debtor at all is surely attempting to collect a debt. The debt collector's procedural failures or the debtor's success in escaping service should not be

relevant to the viability of an FDCPA claim. Dating the violation to the filing of the action is more easily administrable (indeed, Tyler's FDCPA complaint refers to the date of the filing of the debt-collection complaint) and, in the vast majority of cases, will accord with the debt collector's intent at the time of filing. Courts have applied a similar bright-line-rule approach in determining when the statute of limitations accrues for harassing collection letters. Instead of running from the date of receipt, the statute runs from the mailing date, as it is "fixed by objective and visible standards" and "easy to determine." *Mattson v. U.S. West Commc'ns*, 967 F.2d 259, 261 (8th Cir. 1992).

Third, there is no good reason to protect debt collectors who have filed complaints but not yet served process. As the purpose of the FDCPA "is to regulate the actions of debt collectors," *Naas*, 130 F.3d at 893, the focus should be on the debt collector's actions, not on the awareness of the debtor. Filing suit is good evidence of an attempt to collect, and the complaint is good evidence of the details of that attempt. If the debt collector truly filed accidently or prematurely, the FDCPA's "bona fide error" exception is better suited to protect the collector than a legal rule that delays triggering a violation until service of process. *See* 15 U.S.C. § 1692k(c).

Finally, we should remember that the relevant bankruptcy-law question is when is the claim minimally actionable, not whether the claim is fully mature.[5] A debtor may have a better case further along in a collection action, but the filing of the complaint is the "root" of the violation.

### 3

We can dispose of Tyler's usury claim more easily. Under Kentucky law, a usury violation occurs upon the "taking, receiving, reserving, or charging a rate of interest greater than is allowed" by statute. Ky. Rev. Stat. § 360.020. The interest need not have been collected; the statute can be used to "invalidate[] contracts to the extent they are usurious." *E'town Shopping Center, Inc. v. Lexington Finance Co.*, 436 S.W.2d

---

[5]This opinion does not assume that Tyler has stated a claim. We simply hold that an FDCPA claim viable at service of process will be viable at filing.

267, 269 (Ky. 1969). Tyler's usury claim, therefore, was actionable as soon as he signed the contract with Chase Bank (or at least once he became late in his payments) and thus pre-dated his bankruptcy petition by years. Accordingly, his usury claim is property of the estate.

**B**

In dismissing Tyler's claim, the district court also relied on Tyler's failure to amend his bankruptcy filings to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of th[e] bankruptcy case." *See* Official Bankruptcy Form 7. The district court reasoned that the date of the accrual of Tyler's FDCPA claim "is irrelevant," since his failure to amend deprived him of standing. This holding was erroneous, although Tyler's failure to amend is important for different reasons.

The district court's holding invests the bankruptcy forms and scheduling process with undue significance. Although Form 7 refers to suits to which the "debtor is or was a party," this language does not change or clarify the definition of "property of the estate" as defined in 11 U.S.C. § 541. Section 541 is the beginning and end of the analysis of whether a cause of action is property of the estate. Since Form 7 employs somewhat different language, it is theoretically possible that a debtor has violated the procedural requirements of Form 7 without failing to list causes of action that are property of the estate. Such a technical violation, however, should not have any estoppel effect: the purpose of scheduling assets is to make sure the estate contains all the property it should; it would be anomalous to convert an asset to which the debtor is entitled into property of the estate because of an incidental failure to list.

Failure to schedule an asset does have an effect, however, on whether the trustee can be deemed to have abandoned it. Although an asset may originally have been "property of the estate," the debtor regains control if the trustee abandons the asset, under conditions described in 11 U.S.C. § 554. Tyler, therefore, would be able to assert his FDCPA claims—although property of the estate—if the trustee has abandoned them. Property not administered at the closing of a bankruptcy case is ordinarily considered

abandoned.  11 U.S.C. § 554(c).  However, if the property was never scheduled, it remains property of the estate.  11 U.S.C. § 554(c), (d).  Here, Tyler did not originally schedule his FDCPA and usury claims, and he also failed to amend his filings after the case was closed.  Under these circumstances, the trustee cannot be considered to have abandoned the claims, and retains exclusive authority to pursue them.  *Cf. Fedotov v. Peter T. Roach & Assoc.*, 354 F. Supp. 2d 471, 475–76 (S.D.N.Y. 2005) (holding that because debtor scheduled his FDCPA claim, he could pursue it after close of the bankruptcy).

**IV**

In summary, we conclude that Tyler's claims are not barred under Rule 13, but remain property of the bankruptcy estate.  Only if Tyler schedules his claims and the trustee declines to pursue them will he be able to reinitiate his suit.  The judgment of the district court is AFFIRMED.