NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0712n.06

Case No. 13-4195

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 10, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| In re: ROBERT D. UNDERHILL; BETH UNDERHILL, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | BANKRUPTCY APPELLATE |
| ROBERT D. UNDERHILL; BETH UNDERHILL, | ) | PANEL FOR THE SIXTH CIRCUIT |
| | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HUNTINGTON NATIONAL BANK, | ) | |
| | ) | |
| Appellee. | ) | |

BEFORE: MERRITT, COOK, and DONALD, Circuit Judges.

COOK, Circuit Judge. Robert and Beth Underhill filed for Chapter 7 bankruptcy, listing their 100% ownership interest in Golf Chic Boutique, LLC as an asset. After the bankruptcy court granted the Underhills a discharge and closed the case, Golf Chic successfully sued a competitor for tortious interference, garnering a settlement payment to Beth. Alleging that the settlement proceeds constituted property of the bankruptcy estate, creditor Huntington National Bank moved the bankruptcy court to reopen the Underhills' bankruptcy to recoup those funds for the estate's creditors. The court granted the motion, the Bankruptcy Appellate Panel (BAP)

affirmed, and the Underhills appeal. Because Golf Chic's cause of action became a property interest after the Underhills filed for bankruptcy, it cannot qualify as bankruptcy property, and we therefore reverse.

I.

The Underhills filed their personal bankruptcy petition on January 6, 2010, representing that neither they nor Golf Chic had any assets in the nature of unliquidated claims. Three months after the bankruptcy court closed its case, a major supplier canceled its contract with Golf Chic, leading to Golf Chic's demise. The Underhills discovered that a competitor, Ladies Pro Shop ("Ladies Pro"), had complained to the supplier about Golf Chic's prices since 2009, culminating with emails in April and September 2010 requesting that the supplier sever ties with Golf Chic. Golf Chic then sued various defendants associated with Ladies Pro for tortious-interference-with-contract and disparagement. The parties settled, with Golf Chic agreeing to dismiss the case in exchange for $80,000. The defendants sent a check to Golf Chic's lawyers, who then forwarded a portion of the proceeds to Beth Underhill.

Upon learning of the settlement, Huntington moved the bankruptcy court to reopen the Underhills' bankruptcy to allow the trustee to administer the proceeds to creditors. Acknowledging that the proceeds belonged to the estate only if the cause of action constituted a property interest before the Underhills filed for bankruptcy, and pointing to the Underhills' complaint against Ladies Pro, Huntington asserted that the cause of action "arose in 2009" prior to the bankruptcy petition. The Underhills countered that no cause of action existed until Ladies Pro's threats caused Golf Chic's supplier to cancel their contract in September 2010.

Despite the fact that the harm occurred post-petition, the bankruptcy court concluded that the cause of action was "sufficiently rooted in the [Underhills'] pre-bankruptcy past" because the record "ma[d]e clear that events relating or giving rise to the Claim occurred as early as April of 2009." (App. Vol. IV at 934.) The court relied on deposition testimony—taken in connection with the underlying lawsuit—that prior to the filing of the petition Ladies Pro "was complaining" to the supplier about Golf Chic's discounted selling. (*Id*. at 933.) Specifically, a Ladies Pro representative testified that she "may have talked to" the supplier in 2009 after learning about Golf Chic's pricing from various mutual customers, including one who acted as a "mole" by forwarding Golf Chic's email advertisements. (*Id*.; App. Vol. I at 213−14.) And Beth Underhill testified that she learned about Ladies Pro's complaints in April 2009. (App. Vol. III at 725.)

The Underhills appealed to the BAP, which affirmed the bankruptcy court's judgment because the record reflected that "the events giving rise to Golf Chic[]'s claim for tortious interference began in 2009." (App. Vol. V at 1065.) In doing so, the BAP also rejected the Underhills' new argument that the trustee abandoned the cause of action by failing to administer it before the close of the case. (*Id*.) This appeal followed.

## II.

The Underhills contend that the cause of action cannot qualify as bankruptcy property because Ladies Pro caused Golf Chic no pre-petition injury.[1] "We review a bankruptcy court's . . . conclusions of law de novo." *In re Zingale*, 693 F.3d 704, 707 (6th Cir. 2012).

---

[1]The Underhills argue for the first time on appeal that the bankruptcy court lacked jurisdiction because Huntington filed its reopening motion too late. But no deadlines apply to motions to administer assets. *See* 11 U.S.C. § 350(b). Though the Underhills characterize

Pre-petition causes of action belong to the bankruptcy estate and post-petition actions belong to the debtor. Specifically, the debtor's filing of a bankruptcy petition commences a voluntary bankruptcy case, 11 U.S.C. § 301, creating a bankruptcy estate consisting of "legal or equitable interests of the debtor in property as of the commencement of the case," *id.* § 541(a)(1). State substantive law determines the "nature and extent" of causes of action, *see Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013), but federal bankruptcy law dictates when that property interest becomes property of the estate for purposes of § 541, *see In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1172 (6th Cir. 1990).

The Underhills' contention finds considerable support in *Tyler*. That case explained that most courts apply *Segal v. Rochelle*, 382 U.S. 375 (1966)—which defined pre-petition assets under a previous version of the Code as those "sufficiently rooted in the pre-bankruptcy past" of the debtor—to the current version of the Code. *Tyler*, 736 F.3d at 461−62 (collecting cases). And we recognized that "[p]re-petition conduct or facts alone will not 'root' a claim in the past; there must be a pre-petition violation." *Id.* at 462. That is, a cause of action qualifies as bankruptcy estate property only if the claimant suffered a pre-petition injury. *See id.*; *In re Witko*, 374 F.3d 1040, 1044 (11th Cir. 2004) (concluding that legal-malpractice claim belonged to the debtor because he "did not suffer any harm from the alleged legal malpractice prior to or contemporaneous with filing his bankruptcy petition"); *Cook v. Baca*, 512 F. App'x 810, 820

---

Huntington's motion as seeking revocation, which typically must occur within a year of the discharge, *see* 11 U.S.C. § 727(e)(2), Huntington moved only to administer the settlement proceeds from the tort suit. (*See* App. Vol. I at 91−97.)

The Underhills also assert that the trustee abandoned any interest in the Golf Chic/Ladies Pro litigation by not administering it before the close of the case. Yet, because the Underhills failed to include these claims in their schedule of assets, the trustee could not abandon them. *See* 11 U.S.C. § 554(c); *In re Fossey*, 119 B.R. 268, 272 (D. Utah 1990).

(10th Cir. 2013) ("Though . . . the alleged conspiracies involved property that was the subject of dispute between the parties prior to the bankruptcy filing, the alleged constitutional injuries did not exist prior to the filing."); *In re Pettibone Corp.*, 90 B.R. 918, 932 (Bankr. N.D. Ill. 1988) ("[I]f a tort claimant whose employer had purchased a defective product pre-petition is exposed only post-petition to that product and sustains bodily injury only after filing of the manufacturer's bankruptcy, the claimant's bankruptcy claim arises post-petition.").

Here, the record lacks evidence of a pre-petition violation or injury. Though the bankruptcy court pointed to evidence that Ladies Pro monitored Golf Chic's prices and complained to the supplier pre-petition, tortious-interference-with-contract requires more: a "wrongdoer's intentional procurement of [a] contract's breach." *Fred Siegel Co. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999). Ladies Pro first interfered with Golf Chic's supply source in its April 2010 cease-sales demand—after the bankruptcy petition. (App. Vol. II at 378.)[2] Meanwhile, Ladies Pro's pre-petition complaints did not constitute "disparagement," because that tort targets *false statements*. *See A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Counsel*, Nos. 92AP-1540 & 92AP-1541, 1993 WL 387179, at *14 (Ohio Ct. App. Sept. 30, 1993); Restatement (Second) of Torts § 623A; O.R.C. § 4165.02(A)(10) and (12). Nothing in the record intimates that Ladies Pro made any pre-petition false statements against Golf Chic.

---

[2]Huntington contends that the Underhills forfeited this argument because they failed to "link[] the termination of the supplier relationship to the right to file the [tort] action" in the bankruptcy court. Not so. Their counsel argued during the hearing that the debtors "never had any claim at any point the bankruptcy was open and . . . the damage to Golf Chic . . . is the September 30th termination [of the contract]. Before that Golf Chic never had a claim that they could allege . . . ." (App. Vol. IV at 967.) Regardless, their brief to the bankruptcy court stressed that their legal claims against Ladies Pro arose post-petition. (App. Vol. VI at 1076–77.)

In search of a pre-petition violation, Huntington redirects our attention to Golf Chic's underlying complaint against Ladies Pro, which alleged business interference beginning "[i]n or about 2009" and continuing "[f]rom 2009 forward." (App. Vol. I at 114–15.) Yet, because this matter proceeded to an evidentiary hearing, these vague allegations no longer suffice. The parties had the opportunity to document Ladies Pro's alleged misconduct, and the pre-petition price complaints identified by the parties fall well short of intentional procurement of breach-of-contract.

Still, Huntington contends that *Segal* supports treating the claims against Ladies Pro as pre-petition property. That case held that a debtor's loss-carryback tax refund claim belonged to the estate even though the debtor could not claim it until the end of the year (post-petition). *See* 382 U.S. at 380. But the Court explained that the "two key elements pointing toward realization of a refund existed at the time these bankruptcy petitions were filed: taxes had been paid on net income within the past three years, and the year of bankruptcy at that point exhibited a net operating loss." *Id.*; *see also Witko*, 374 F.3d at 1043 (noting that in *Segal* "the predicates for receiving the refunds . . . occurred pre-petition"). No similar pre-petition predicates established Golf Chic's tort claims here. The business interference occurred post-petition.

Offering a final counter-argument, Huntington cites lower-court cases for the proposition that the "the accrual date does not control whether a cause of action constitutes property of the estate." None of these cases, however, concerned a cause of action unsupported by a pre-petition legal injury. *See, e.g.*, *In re Parker*, 368 B.R. 86, 2007 WL 1376081, at *7−8 (6th Cir. BAP 2007) (table) (legal malpractice claim, where the allegedly deficient representation resulted in a pre-petition judgment against the claimant); *In re Richards*, 249 B.R. 859, 861 (Bankr. E.D.

Mich. 2000) (medical-malpractice claim where "both the onset of the debtor's disease and a greater portion of its progress occurred before he filed his [bankruptcy] petition").

III.

We REVERSE the judgment of the BAP and REMAND for proceedings consistent with this opinion.

**BERNICE BOUIE DONALD, Circuit Judge, dissenting.** The Underhills possess a 100% ownership interest in Golf Chic Boutique, LLC, which they listed as an asset when they filed a bankruptcy petition in January of 2010. They were discharged from bankruptcy in May of 2010, and their bankruptcy case was closed the following month. In October of 2010, Golf Chic sued The Ladies Pro Shop, Inc., a competitor, in Ohio state court, asserting claims of tortious interference with business relationships and ultimately achieving a settlement of $80,000.00. The conduct that gave rise to the tortious interference claims culminated in the termination of Golf Chic's contract with its primary supplier in September of 2010. It is undisputed, however, that some of the conduct occurred in 2009. Also undisputed is Beth Underhill's testimony that she became aware of this conduct in April of 2009. Yet the Underhills failed to list any contingent or unliquidated claims on the part of Golf Chic in their bankruptcy schedules.

Although it concedes that 11 U.S.C. § 541 designates pre-petition causes of action the property of the bankruptcy estate, the majority does not hold that the Underhills' nondisclosure justifies reopening their bankruptcy case. My colleagues rather conclude that "the record lacks evidence of a pre-petition violation or injury" as would bring Golf Chic's tortious interference claims within § 541's sweep. *Ante* at 4. According to the majority, the earliest that such an injury could have occurred was in April of 2010—post-petition—when Ladies Pro demanded that Golf Chic's primary supplier sever its ties with the company. *Id.* at 6.

As we recently recognized in *Tyler v. DH Capital Management, Incorporated*, however, "'[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.'" 736 F.3d 455, 461 (6th Cir. 2013) (quoting *Azbill v. Kendrick (In re Azbill)*, No. 06-8074, 2008 Bankr. LEXIS 527, at *19-20 (B.A.P. 6th Cir. Mar.

11, 2008)). A claim, therefore, need only be "sufficiently rooted in the pre-bankruptcy past" to comprise part of the debtor's bankruptcy estate. *Segal v. Rochelle*, 382 U.S. 375, 380 (1966). Here, there is no question that some of the conduct on which Golf Chic's tortious interference claims were based occurred pre-petition and that Beth Underhill became aware of the conduct before she and her husband filed their bankruptcy petition. Golf Chic's claims against Ladies Pro thus appear to have been "sufficiently rooted in the pre-bankruptcy past" to make them assets of the Underhills' bankruptcy estate. In failing to list the claims as contingent interests in their bankruptcy schedules, the Underhills thus deprived Huntington National Bank and other creditors of the shares of the settlement proceeds to which they were entitled under § 541.

True enough, we stated in *Tyler* that "pre-petition conduct or facts alone will not 'root' a claim in the [pre-bankruptcy] past[.]" 736 F.3d at 462. Instead, we concluded, "there must be a pre-petition violation" to satisfy the "sufficiently rooted" test. *Ibid*. But we also acknowledged that courts have diverged over how to apply this test to causes of action as distinct from other assets. "Some courts," we explained, "have applied the test expansively, including contingent and unripe claims as property of the state." *Ibid*. "Others," we recognized, "have treated the test as equivalent to the determination of when the cause of action accrues under the substantive law." *Ibid*. Rather than weigh in on one side or the other, we decided that "we need not answer whether a cause of action, one or more of whose elements have not been satisfied at the time of the petition, may become pre-petition property." *Id*. at 463.

Thus, it is of little consequence that, under Ohio law, tortious interference claims are not actionable until damages have been sustained. *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999); *PNH v. Alfa Laval Flow, Inc.*, 940 N.E.2d 577, 587-88 (Ohio Ct. App. 2010). Not only does federal law, rather than state law, determine when a property

interest becomes part of the bankruptcy estate, *see ante* at 4 (citing *In re Terwilliger's Catering Plus, Inc.*, 911 F.2d 1168, 1172 (6th Cir. 1990)); *Tyler* expressly left open the possibility that unaccrued claims could be "sufficiently rooted in [a debtor's] pre-bankruptcy past" to comprise part of the bankruptcy estate. *Segal*, 382 U.S. at 380. The majority's reliance on the fact that Golf Chic's tortious interference claims were not yet actionable when the Underhills filed their bankruptcy petition in 2010 is therefore misplaced; the claims were partially based on conduct of which Beth Underhill was aware in 2009. Similarly, the majority mistakenly dismisses Huntington's argument to this effect as supported by "lower-court cases" that did not "concern[ ] a cause of action unsupported by a pre-petition legal injury." *Ante* at 7. But it is not merely lower courts that have recognized that a claim's accrual date does not control the question of whether it comprises part of the bankruptcy estate; our own court also supported this notion in *Tyler*.

The Underhills listed their 100% ownership interest in Golf Chic as an asset when they filed for bankruptcy. They did not list claims that Golf Chic filed months later as contingent interests despite being aware of some of the conduct on which the claims were based. The majority rejects the Bankruptcy Court and the Bankruptcy Appellate Panel's conclusion that the claims were part of the Underhills' bankruptcy estate and, in so doing, divests Huntington of its rightful share of the settlement proceeds in which the claims resulted. I must, therefore, respectfully dissent.