BERNICE BOUIE DONALD, Circuit Judge,
dissenting.
The Underhills possess a 100% ownership interest in Golf Chic Boutique, LLC, which they listed as an asset when they filed a bankruptcy petition in January of 2010. They were discharged from bankruptcy in May of 2010, and their bankruptcy case was closed the following month. In October of 2010, Golf Chic sued The Ladies Pro Shop, Inc., a competitor, in Ohio state court, asserting claims of tor-tious interference with business relationships and ultimately achieving a settlement of $80,000.00. The conduct that gave rise to the tortious interference claims culminated in the termination of Golf Chic’s contract with its primary supplier in September of 2010. It is undisputed, however, that some of the conduct occurred in 2009. *484 Also undisputed is Beth Underhill’s testimony that she became aware of this conduct in April of 2009. Yet the Underhills failed to list any contingent or unliquidated claims on the part of Golf Chic in their bankruptcy schedules.
Although it concedes that 11 U.S.C. § 541 designates pre-petition causes of action the property of the bankruptcy estate, the majority does not hold that the Under-hills’ nondisclosure justifies reopening their bankruptcy case. My colleagues rather conclude that “the record lacks evidence of a pre-petition violation or injury” as. would bring Golf Chic’s tortious interference claims within § 541’s sweep. Ante at 482. According to the majority, the earnest that such an injury could have occurred was in April of 2010 — post-petition — when Ladies Pro demanded that Golf Chic’s primary supplier sever its ties with the company. Id. at 488.
As we recently recognized in Tyler v. DH Capital Management, Incorporated, however, “ ‘[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.’” 736 F.3d 455, 461 (6th Cir.2013) (quoting Azbill v. Kendrick (In re Azbill), No. 06-8074, 2008 WL 647407, at *7, 2008 Bankr.LEXIS 527, at *19-20 (6th Cir. BAP Mar. 11, 2008)). A claim, therefore, need only be “sufficiently rooted in the pre-bankruptcy past” to comprise part of the debtor’s bankruptcy estate. Segal v. Rochelle, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). Here, there is no question that some of the conduct on which Golf Chic’s tortious interference claims were based occurred pre-petition and that Beth Underhill became aware of the conduct before she and her husband filed their bankruptcy petition. Golf Chic’s claims against Ladies Pro thus appear to have been “sufficiently rooted in the pre-bankruptcy past” to make them assets of the Underhills’ bankruptcy estate. In failing to list the claims as contingent interests in their bankruptcy schedules,' the Underhills thus deprived Huntington National Bank and other creditors of the shares of the settlement proceeds to which they were entitled under § 541.
True enough, we stated in Tyler that “pre-petition conduct or facts alone will not ‘root’ a claim in the [pre-bankruptcy] past[.]” 736 F.3d at 462. Instead, we concluded, “there must be a pre-petition violation” to satisfy the “sufficiently rooted” test. Ibid. But we also acknowledged that courts have diverged over how to apply this test to causes of action as distinct from other assets. “Some courts,” we explained, “have applied the test expansively, including contingent and unripe claims as property of the state.” Ibid. “Others,” we recognized, “have treated the test as equivalent to the determination of when the cause of action accrues under the substantive law.” Ibid. Rather than weigh in on one side or the other, we decided that “we need not answer whether a cause of action, one .or more of whose elements have not been satisfied at the time of the petition, may become pre-petition property.” Id. at 463.
Thus, it is of little consequence that, under Ohio law, tortious interference claims are not actionable until damages have been sustained. See Fred Siegel Co., L.P.A. v. Arter & Hadden, 85 Ohio St.3d 171, 707 N.E.2d 853, 858 (1999); PNH v. Alfa Laval, Inc., 189 Ohio App.3d 704, 940 N.E.2d 577, 587-88 (2010). Not only does federal law, rather than state law, determine when a property interest becomes part of the bankruptcy estate, see ante at 482 (citing In re Terwilliger’s Catering Plus, Inc., 911 F.2d 1168, 1172 (6th Cir.1990)); Tyler expressly left open the possibility that unaccrued claims could be *485 “sufficiently rooted in [a debtor’s] pre-bankruptcy past” to comprise part of the bankruptcy estate. Segal, 382 U.S. at 380, 86 S.Ct. 511. The majority’s reliance on the fact that Golf Chic’s tortious interference claims were not yet actionable when the Underhills filed their bankruptcy petition in 2010 is therefore misplaced; the claims were partially based on conduct of which Beth Underhill was aware in 2009. Similarly, the majority mistakenly dismisses Huntington’s argument to this effect as supported by “lower-court cases” that did not “concern[] a cause of action unsupported by a pre-petition legal, injury.” Ante at 483. But it is not merely lower courts that have recognized that a claim’s accrual date does not control the question of whether it comprises part of the bankruptcy estate; our own court also supported this notion in Tyler.
The Underhills listed their 100% ownership interest in Golf Chic as an asset when they filed for bankruptcy. They did not list claims that Golf Chic filed months later as contingent interests despite being aware of some of the conduct on which the claims were based. The majority rejects the Bankruptcy Court and the Bankruptcy Appellate Panel’s conclusion that the claims were part of the Underhills’ bankruptcy estate and, in so doing, divests Huntington of its rightful share of the settlement proceeds in which the claims resulted. I must, therefore, respectfully dissent.